UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUZANNE RIBANDO,

        Plaintiff,

-against-

THE CITY OF NEW ROCHELLE, THE NEW
ROCHELLE POLICE DEPARTMENT,
JEFFREY WILSON, MICHAEL MESSINA,
VINCENT MIRABILE, PATRICK HICKEY
and TRACEY HICKEY,

        Defendants,

------------------------------------------------------------------X

**COMPLAINT**
**(Jury Trial Demanded)**

Docket No.: 11-cv-0976 (KMK)

ECF CASE

        Plaintiff SUZANNE RIBANDO, by her attorneys, CASCIONE, GALLUZZI LLC,

complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action to recover compensatory damages, punitive damages and attorney's fees

arising out of defendants' violation of plaintiff's rights as secured by the Civil Rights Act, 42

U.S.C. 1983, 1985 and 1988 and of rights secured by the First, Fourth and Fourteenth

Amendments to the United States Constitution and the laws of the State of New York. A final

cause of action is made for Racketeering (RICO) violations.

2.     All of the incidents occurred in the City of New Rochelle, New York at various locations

including but not limited to the home and property of the plaintiff SUZANNE RIBANDO at 106

Stephenson Boulevard, New Rochelle New York, 110 Stephenson Boulevard, New Rochelle

New York, New Rochelle Police Department 475 North Avenue, New Rochelle New York

10801, New Rochelle City Courthouse, 475 North Avenue, New Rochelle, New York 10801 and

Beckwith Pointe, 700 Davenport Avenue, New Rochelle New York 10805.

3.      All of the incidents were caused in whole or in part by employees, agents and servants of

THE CITY OF NEW ROCHELLE including Police Officers, Detectives and the Clerk of the

City Court James Generoso.

4.      The false arrest, conspiracy, harassment and malicious prosecution, by the defendants of

SUZANNE RIBANDO, began prior to and in or around June of 2006 and was the result of a

conspiracy between New Rochelle residents PATRICK and TRACEY HICKEY and employees,

agents and servants of THE CITY OF NEW ROCHELLE including members of the NEW

ROCHELLE POLICE DEPARTMENT and Clerk of the City Court James Generoso.

5.      On all of the occasions listed herein, including but not limited to August 22, 2007, May

24, 2008, May 29, 2008, December 9, 2008, and June 8, 2009, members of the New Rochelle

Police Department, acting under the color of state law, arrested plaintiff SUZANNE RIBANDO

without probable cause and subjected her to harassment, intimidation and humiliation during the

course of her arrests and incarcerations.  Defendants deprived plaintiff of her constitutional and

common law rights during the course of her arrests.  Defendants deprived plaintiff of her

constitutional and common law rights when they caused the unjustifiable arrest and malicious

prosecution of plaintiff and unlawfully confined plaintiff.

**JURISDICTION AND VENUE**

6.      Jurisdiction is founded upon the existence of a federal question.

7.      Pursuant to 28 U.S.C. 1331 and 1343, jurisdiction is proper as plaintiff's claims arise under federal law.  Pursuant to 28 U.S.C. 1367, jurisdiction is proper as to the claims of plaintiff arising under the common law of the State of New York.  Pursuant to 28 U.S.C. 1391(b) venue is proper as the acts complained of occurred in the State of New York and County of Westchester.

8.      That an award of attorney's fees is appropriate pursuant to 42 U.S.C. 1988.

**PARTIES**

9.      Plaintiff SUZANNE RIBANDO is a citizen of the United States.  She resides in the State of New York and City of New Rochelle in Westchester County.   Ms. RIBANDO at all relevant times lived with her parents Betty and James Ribando at 106 Stephenson Boulevard.  Ms. RIBANDO has lived in the home since her birth more than thirty seven years ago.  Ms. RIBANDO is an Iona College graduate who had never been arrested and had no criminal record prior to the commencement of malicious prosecution by the defendants named herein.

10.     PATRICK HICKEY, a resident of the State of New York at all times relevant to this complaint is a complaining witness against plaintiff SUZANNE RIBANDO who utilized his business/social relationships within the NEW ROCHELLE POLICE DEPARTMENT, The City

Court Of New Rochelle and with other employees, agents and servants of the municipal government of the CITY OF NEW ROCHELLE to harass, intimidate, arrest and maliciously prosecute SUZANNE RIBANDO.

11.     TRACEY HICKEY, was, at all times hereinafter mentioned, the wife of PATRICK HICKEY and also a resident of the State of New York, City of New Rochelle, Westchester County and at various times relevant to this complaint was a complaining witness against plaintiff SUZANNE RIBANDO who by virtue of marriage to PATRICK HICKEY utilized his business/social relationships within the NEW ROCHELLE POLICE DEPARTMENT, The City Court Of New Rochelle and other employees, agents and servants of the municipal government of the CITY OF NEW ROCHELLE to harass, intimidate, arrest and maliciously prosecute SUZANNE RIBANDO.

12.     PATRICK and TRACEY HICKEY have resided at 110 Stephenson Boulevard in the City of New Rochelle since in or around 2004.

13.     Defendant CITY OF NEW ROCHELLE is a municipal corporate sub division organized pursuant to the laws of the State of New York.  It has all the powers vested in it by the laws of the State of New York and the Charter of the City of New Rochelle.

14.     It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. THE CITY OF NEW ROCHELLE assumed the risks incidental to the maintenance of a police force and the

employment of police officers as said risks attach to the public consumers of the services provided by the NEW ROCHELLE POLICE DEPARTMENT.

15.     James Generoso (hereinafter also Generoso), at all times relevant to this complaint, was the City Court Clerk in the City of New Rochelle, New York.  As such he had discretionary decision making authority in the courts of the City of New Rochelle regarding the calendaring of criminal cases, the scheduling of arraignments and the assignment of cases to various judges.

16.     Upon information and belief Generoso, at all times relevant to this complaint and at times prior thereto maintained a business/social relationship with complainant PATRICK HICKEY outside his duties as Court Clerk in the City of New Rochelle, New York.

17.     Upon information and belief, at all times relevant to this complaint and at times prior thereto  Generoso's daughter was  hired  and/or  supervised  by  PATRICK  HICKEY  and  was employed at Beckwith Pointe, a catering facility located in New Rochelle.

18.     JEFFREY WILSON, (hereinafter WILSON), at all times relevant to this complaint was a Detective in THE NEW ROCHELLE POLICE DEPARTMENT.

19.     Upon information and belief WILSON, at all times relevant to this complaint and at times prior thereto, WILSON maintained a business/social relationship with complainant PATRICK HICKEY by virtue of the fact that WILSON was employed by Beckwith Pointe, a catering facility located in New Rochelle where PATRICK HICKEY was the chief chef and supervisor.

WILSON'S off duty employment was directly approved by New Rochelle Police Commissioner Patrick Carroll.

20.     MICHAEL MESSINA, (hereinafter MESSINA), at all times relevant to this complaint was a Detective in THE NEW ROCHELLE POLICE DEPARTMENT.

21.     Upon information and belief MESSINA, at all times relevant to this complaint and at times prior thereto, MESSINA maintained a business/social relationship with complainant PATRICK HICKEY by virtue of the fact that MESSINA was employed by Beckwith Pointe, a catering facility located in New Rochelle where PATRICK HICKEY was the chief chef and supervisor.  MESSINA'S off duty employment was directly approved by New Rochelle Police Commissioner Patrick Carroll.

22.     VINCENT MIRABILE, Titus Alexander, Raymond Andolina , Thomas Straehle, Tim Adrian, Lawrence Bornholtz, Michael Bota, Paul D'Erasmo, Dalberto Aguilar, Detective Jason Buono, Michael Ciarfardini, Christopher Gugliemo, Vincent Zazzarino, Ted Pitzel, Ryan Downs, Vincent Marion, Yadilene Machado, John Young, Vincent Marco, Melvin Molina, Joseph Salerno, John Inzeo and Ferguson at all times relevant to this complaint were police officers or detectives in the New Rochelle Police Department.

23.     Dana Ziogas, (hereinafter Ziogas), at all times relevant to the complaint was a citizen of the United States of America, residing in the State of New York  and City of New Rochelle in Westchester County.  Ziogas resides at 112 Stephenson Blvd. in New Rochelle.  The Ziogas and

HICKEY residences are on contiguous lots and share a property line with the HICKEY home separating the Ziogas property from the RIBANDO residence.

24.     WILSON, MIRABILE, and MESSINA, at all relevant times herein were members of THE NEW ROCHELLE POLICE DEPARTMENT and acting within the scope of their employment and under color of state law in the course and scope of their duties and functions as agents, servants and employees and officers of THE CITY OF NEW ROCHELLE POLICE DEPARTMENT and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

25.     WILSON, MIRABILE, and MESSINA, were acting for and on behalf of the NEW ROCHELLE POLICE DEPARTMENT at all times relevant herein, with the power and authority vested in them as officers, agents and employees of THE NEW ROCHELLE POLICE DEPARTMENT and incidental to their lawful pursuit of their duties as officers, employees and agents of THE NEW ROCHELLE POLICE DEPARTMENT.

26.     On August 22, 2007, without probable cause plaintiff was falsely arrested by MIRABILE and improperly charged with the offense of harassment in the Second Degree, a violation of the New York State Penal Law 240.26.

27.     On May 24, 2008 plaintiff was falsely arrested by Detectives WILSON and MESSINA improperly charged with the Offenses of Criminal Mischief in the Fourth Degree, a violation of

Penal Law 145.00. and Criminal Contempt in the Second Degree, a violation of Penal Law 215.50.

28.     On May 24, 2008 plaintiff was also improperly charged with the Offense of Criminal Contempt in the Second Degree, a violation of Penal Law 215.50, for acts alleged to have occurred on February 23 or February 24, 2008 although plaintiff was not arrested or charged at the time of the alleged crimes.

29.     On May 24, 2008 plaintiff was also improperly charged with the Offense of Criminal Contempt in the Second Degree, a violation of Penal Law 215.50, for acts alleged to have occurred on April 23, 2008 although claimant was not arrested or charged at the time of the alleged crime.

30.     On May 29, 2008 plaintiff was falsely arrested by Detective WILSON and improperly charged with violation Criminal Mischief in the Second Degree section 145.10, a Class D Felony. Thereafter, plaintiff was incarcerated against her will for an extended period of time.

31.     On December 9, 2008 plaintiff was falsely arrested by Detective WILSON and improperly charged with the Offenses of Criminal Mischief in the Fourth Degree, a violation of Penal Law 145.00 01 and Criminal Contempt in the Second Degree, a violation of Penal Law 215.00.

32.     On June 8, 2009 plaintiff was falsely arrested by Detective WILSON and improperly charged with the Offenses of Criminal contempt in the Second Degree, a violation of Penal Law 215.50 and Harassment in the Second Degree, a violation of Penal Law 240.26 for acts that allegedly occurred on or about and between January 2009 and April 2009 and on May 28, 2009 although plaintiff was not arrested for same until June 8, 2009.

33.     In November of 2009 a trial of all charges was held in the City Court of New Rochelle before the Honorable John Colangelo and on November 17, 2009, after deliberation the jury acquitted SUZANNE RIBANDO of all criminal charges with the exception of two alleged violations of the unconstitutional order of protection which were issued as a result of the false alleged charges of which SUZANNE RIBANDO was acquitted.  The sentencing on the two counts of which the jury convicted her was set by the court for February 24, 2010 however sentencing has not yet been pronounced.

34.     A Notice of Claim was filed January 11, 2010 and an amended Notice of Claim was filed in February 2010.  A hearing pursuant to General Municipal Law Section 50-h has been held.

35.     Due to the fact that the jury verdict on the two contempt counts was unconstitutional, against the weight of the testimony and based on insufficient evidence, defense counsel John Mangialardi prepared a motion to set aside the verdict prior to the sentencing.

36.     Despite numerous attempts to obtain the trial transcript for use in his motion, Mr. Mangialardi was unsuccessful.  Those employed by the City Court of New Rochelle represented

that the court stenographer was no longer employed at the City Court of New Rochelle and he had taken the transcript with him. Due to the supposedly missing transcript a series of adjournments of SUZANNE RIBANDO'S sentencing date ensued.

37.     In or about June of 2010 Mr. Mangialardi obtained a portion of the transcript and filed his motion to set aside the verdict.  The District Attorney's office was given until July to respond. Upon information and belief the assistant district attorney continued to represent to the court that they were unable to obtain the trial transcript from the City Court of New Rochelle's courtroom stenographer. This situation was highly unusual and can only be explained by intentional interference with the normal process.  After several more adjournments the district attorney's office put in responding papers and the motion is on for decision in or around March 10, 2011.

38.     The delay in the submission of the motion to set aside the verdict and the sentencing date has prejudiced SUZANNE RIBANDO's ability to set aside the verdict or file an appeal with regard to the two convictions.  All the while plaintiff remains shackled by the draconian and unconstitutional order of protection which prevents and restricts her movement on her own property.

39.     Upon information and belief the delays associated with the production of transcript could not have occurred without the intentional malfeasance or intentional interference by person(s) employed at the City Court of New Rochelle in the position to hamper the process or tamper with court documents.

## FACTUAL NARRATIVE

40.     The HICKEY and RIBANDO residences are on contiguous lots and share a property line.  Their back yards are contiguous and at all relevant times were separated by a wooden stockade style fence.

41.     In or around the summer of 2006 the HICKEYS' two young boys were kicking a ball against the stockade fence which separated their  back yard from the RIBANDO back yard causing Ms. RIBANDO'S two small dogs to become agitated and bark.   Ms. RIBANDO called out to the boys to stop kicking the ball against the fence.  Thereafter PATRICK HICKEY yelled obscenities at Ms. RIBANDO and ordered her not to speak to his children.  From that point on PATRICK and TRACEY HICKEY and their two children commenced a pattern of tormenting Ms. RIBANDO'S dogs and otherwise harassing Ms. RIBANDO.

42.     Upon information and belief at all times relevant hereto PATRICK HICKEY was in an executive position at an exclusive catering hall and beach club known as Beckwith Pointe located on Davenport Avenue in New Rochelle, New York.  Upon information and belief Mr. HICKEY used Beckwith Pointe, and his association with the owners, agents, employees and vendors, as a patronage mill, given his stature, bestowing favors, perks and jobs upon members of THE NEW ROCHELLE POLICE DEPARTMENT, members of the New Rochelle City Court system and their families and others in the municipal government of New Rochelle.  Upon information and belief Mr. HICKEY'S position at Beckwith Pointe combined with his obsessive efforts to use the police to harass and intimidate Ms. RIBANDO directly or indirectly

influenced/caused the defendants named herein and others to maliciously prosecute SUZANNE RIBANDO.

43.   PATRICK and TRACEY HICKEY began to call the NEW ROCHELLE POLICE DEPARTMENT and make unfounded complaints against SUZANNE RIBANDO. Unbeknownst to SUZANNE RIBANDO, PATRICK HICKEY had social and/or business relationships with several New Rochelle Police Officers as well as persons in the municipal government of New Rochelle and in the City Court of New Rochelle. Utilizing his aforementioned connections PATRICK and TRACEY HICKEY began a campaign to have SUZANNE RIBANDO arrested.

44.   Collectively the HICKEYS called in false complaints to THE NEW ROCHELLE POLICE DEPARTMENT on dates including but not limited to December 13, 2006, May 9, 2007, June 2007 and August 14, 2007, August 22, 2007, March 9, 2008, March 11, 2008, April 24, 2008, May 9, 2008, May 24, 2008, December 9, 2008, April 1, 2009, April 3, 2009, May 28, 2009, and June 1, 2009.

45.   Upon information and belief PATRICK HICKEY had multiple discussions over the telephone and in person with members of THE NEW ROCHELLE POLICE DEPARTMENT about how he could effectuate the arrest of SUZANNE RIBANDO. The in person conversations were conducted at places including but not limited to, the HICKEY residence, at Beckwith Point, The City Court of New Rochelle and THE NEW ROCHELLE POLICE DEPARTMENT.

46.     In or around June of 2007 following a directive call from PATRICK HICKEY, Detective WILSON, without any legal justification, appeared at the home of SUZANNE RIBANDO and in a threatening manner warned her to stay away from the HICKEYS and their children. SUZANNE RIBANDO denied harassment of the HICKEYS or their children and tried to explain that HICKEYS were constantly taunting, threatening and harassing her.  Detective WILSON heard but ignored SUZANNE RIBANDO'S complaints about the HICKEYS.  Detective WILSON then issued a veiled threat to SUZANNE RIBANDO and left her home.


47.     Detectives WILSON, MESSINA and MIRABILE with malicious intent and with reckless disregard for the civil rights of SUZANNE RIBANDO insinuated themselves into the case on behalf of the complainant PATRICK HICKEY and did conspire with others at the NEW ROCHELLE POLICE DEPARTMENT and PATRICK HICKEY (and with PATRICK HICKEY'S wife, TRACEY HICKEY who is also a criminal complainant) and certain individuals at the City Court of New Rochelle, to harass, intimidate, humiliate, arrest and maliciously prosecute SUZANNE RIBANDO and in so doing Detectives WILSON, MESSINA and MIRABILE and others at THE NEW ROCHELLE POLICE DEPARTMENT abused process and violated the civil rights of SUZANNE RIBANDO.


48.     Detective WILSON'S improper actions caused SUZANNE RIBANDO to be falsely arrested and incarcerated on the numerous occasions recited herein. The said detectives and other officers of THE NEW ROCHELLE POLICE DEPARTMENT intentionally failed to properly investigate threatening acts and crimes of aggression and violence against SUZANNE RIBANDO and failed to accept, consider or investigate complaints from SUZANNE RIBANDO

against the HICKEYS. Frequently the complaints made by the HICKEYS were patently contrived and inconsistent but these deficiencies were intentionally overlooked by New Rochelle Police officers.

49.     On two occasions during the course of the conspiracy the HICKEYS actually threatened SUZANNE RIBANDO'S life.  On one occasion Tracey HICKEY directly stated "die bitch" to Ms. RIBANDO and on another occasion PATRICK HICKEY stated "You're dead bitch".

50.     During the middle of the night on May 18, 2007 a heavy rock was thrown through the windshield of plaintiff's automobile which was parked on her property.  Plaintiff called the police and the responding officer made a report but no investigation was performed by THE NEW ROCHELLE POLICE DEPARTMENT. Thereafter other criminal acts of property damage were perpetrated on plaintiff including the uprooting of flowers, removal of lawn ornaments and a garden hose cut with a knife.

51.     In or around the weeks leading up to and including July 22, 2008 plaintiff received a series of harassing telephone call hang ups.  On July 22, 2008 a recording of the sound of gun shots was left on Ms. RIBANDO'S home telephone answering machine.

52.     Shortly thereafter Plaintiff appeared at NEW ROCHELLE POLICE DEPARTMENT Headquarters and reported the incident to Police Officer D'Erasimo but no investigation was conducted by the NEW ROCHELLE POLICE DEPARTMENT despite the ominous and violent nature of the calls.

53.     Even without investigation of the complaints of SUZANNE RIBANDO, the nature and substance of the acts complained of should have caused the members of THE NEW ROCHELLE POLICE DEPARTMENT to become skeptical of the chronic calculated complaints of the HICKEYS.   Due to the fact that members of the police force were conspirators with the HICKEYS in the malicious prosecution of Ms. RIBANDO, no scrutiny of the veracity of the HICKEY complaints was undertaken.

54.     As a result of hostile treatment by the officers of the NEW ROCHELLE POLICE DEPARTMENT and their refusal to properly investigate claims of threats to her safety, SUZANNE RIBANDO lost faith in the NEW ROCHELLE POLICE DEPARTMENTS' ability, willingness or desire to protect her as a citizen of New Rochelle.

55.     Unbeknownst to SUZANNE RIBANDO was the fact that the HICKEYS had relationships with multiple members of the NEW ROCHELLE POLICE DEPARTMENT and officials working within the municipality of THE CITY OF NEW ROCHELLE and its City Court system which caused members of the NEW ROCHELLE POLICE DEPARTMENT to act at the outset against her in all matters complained of without investigative impartiality or fairness. All of the officers who responded to Ms. RIBANDO'S residence pursuant to a complaint from the HICKEYS did so in an aggressive, intimidating and rude manner without provocation or professional objectivity.

56.     The misconduct of Detective WILSON, Detective MESSINA, Detective MIRABILE and others at the NEW ROCHELLE POLICE DEPARTMENT contributed in causing SUZANNE RIBANDO to suffer economic damages, severe duress, emotional stress and hopelessness with regard to defending against false claims which led to her unlawful arrest on August 22, 2007.

57.     Detectives WILSON, MESSINA and MIRABILE conspired with others including PATRICK  HICKEY and TRACEY HICKEY and their neighbor Dana Ziogos to create and fabricate evidence against SUZANNE RIBANDO, file complaints and sworn statements that contained  information that was untrue, inflammatory and intentionally designed to create a perception of probable/reasonable cause to repeatedly arrest and prosecute SUZANNE RIBANDO.

58.     Faced with an apparent conspiracy between the HICKEYS, the NEW ROCHELLE POLICE DEPARTMENT and others within the municipal government and court system of THE CITY OF NEW ROCHELLE and due to severe emotional stress and the duress of being falsely arrested, and incarcerated, combined with the costs and fears of defending a criminal trial against the probable false testimony of members of the NEW ROCHELLE POLICE DEPARTMENT, SUZANNE RIBANDO pled guilty to the non-criminal violation of Harassment in the Second Degree.  Said guilty plea resulted in an order of protection issued on November 9, 2007.

59.     In or around April of 2009 Ms. RIBANDO filed a civil lawsuit in New York State Supreme Court, Westchester County against PATRICK  and  TRACEY  HICKEY stating

numerous causes of action including harassment, intentional infliction of emotional distress, abuse of process and perjury.

60.     During the various all times when SUZANNE RIBANDO was arrested and in the custody of the NEW ROCHELLE POLICE DEPARTMENT, Detective WILSON, Detective VINCENT MIRABILE and others humiliated, degraded and mocked SUZANNE RIBANDO with the intention of causing her distress while she was incarcerated.

61.     The behavior of Detectives WILSON, MESSINA and MIRABILE toward SUZANNE RIBANDO was demeaning, sexist, sadistic, and despicable. Detectives WILSON and MIRABILE and other officers asked suggestive questions and made statements to SUZANNE RIBANDO which were inappropriate and without legal justification.  Said statements were intended to humiliate, degrade, harass and intimidate and gain information favorable to the unlawful prosecution of SUZANNE RIBANDO.

62.     Detectives MIRABILE and WILSON repeatedly asked questions about SUZANNE RIBANDO'S civil lawsuit filed against the HICKEYS.  Said detectives were blatantly suggestive in their inference that she drop the lawsuit and move out of her home to avoid future police action.

63.     During the course of her criminal prosecution The Westchester County District Attorney's Office began and continued an unethical effort to get SUZANNE RIBANDO to drop her civil suit by offering plea bargain terms contingent upon her moving out of her home and

discontinuance of the civil lawsuit filed against the HICKEYS.  Upon information and belief James Generoso, Clerk of the City Court of New Rochelle sat in on plea discussions and influenced the substance of terms of the plea bargains offered to Ms. RIBANDO prior to her criminal trial.

64.    Because of their relationship with the complainants, Detectives WILSON, MIRABILE, MESSINA and others at the NEW ROCHELLE POLICE DEPARTMENT  went beyond the fulfillment of their duties as officers/detectives to build a case against SUZANNE RIBANDO by any means necessary, including but not limited to creating and manipulating evidence, notwithstanding the reality that SUZANNE RIBANDO did not violate any law and any reasonable objective person would realize that PATRICK HICKEY and TRACEY HICKEY were abusing an order of protection and utilizing THE NEW ROCHELLE POLICE DEPARTMENT to punish, harass and intimidate and arrest SUZANNE RIBANDO.

65.    THE NEW ROCHELLE POLICE DEPARTMENT allowed the complainants to use its officers and detectives to harass, intimidate and punish SUZANNE RIBANDO without question or investigative impartiality.  Detectives WILSON, MIRABILE, MESSINA and other officers sought to provide and did at certain times provide PATRICK HICKEY with information which PATRICK HICKEY utilized to aid his continued malicious harassment of SUZANNE RIBANDO by manipulating the substance of the complaints about SUZANNE RIBANDO in order to permit or encourage the responding officers to deal harshly and severely with SUZANNE RIBANDO and arrest her, for any perceived violation of the order of protection.

66.     It was also Detective WILSON'S intention and plan to craft a case the Westchester County District Attorney's Office would feel compelled to prosecute by repeatedly petitioning the District Attorney's office with numerous complaints of alleged violations of the order of protection, by SUZANNE RIBANDO.

67.     On several occasions Detective WILSON advised the District Attorney's Office of alleged acts he claimed had violated the order of protection.  The District Attorney's Office advised Detective WILSON that the conduct complained of did not violate the order of protection.  Detective WILSON persisted and continued to contact the District Attorney's Office in order to fabricate a formula of elements that would prompt the prosecutors to indict and prosecute SUZANNE RIBANDO.

68.     During the process Detective WILSON discussed and conspired with PATRICK HICKEY and TRACEY HICKEY regarding the substance of his consultations with the District Attorney's Office which caused the HICKEYS to tailor the substance of their false complaints to include those components which the prosecutors had  deemed necessary for the arrest, indictment and prosecution of SUZANNE RIBANDO.

69.     Detectives WILSON and MIRABILE and MESSINA and other officers and detectives concealed personal, and or working/financial relationships with the complainant PATRICK HICKEY which constituted a conflict of interest detrimental to the well being and civil rights of Ms. RIBANDO.

70.     The detectives concealed their relationships/conflicts so they could remain in a position to further aid and abet PATRICK and TRACEY HICKEY's harassment, intimidation and malicious prosecution of SUZANNE RIBANDO.

71.     Upon information and belief the said detectives and other officers of THE NEW ROCHELLE POLICE DEPARTMENT received consideration for their impartiality from PATRICK HICKEY and others associated with PATRICK HICKEY.  Said conflict of interest was prejudicial and detrimental to justice, fairness and the civil rights and well being of SUZANNE RIBANDO.  Said detectives and officers' relationships with PATRICK HICKEY influenced their handling of the case to SUZANNE RIBANDO'S detriment.

72.     The NEW ROCHELLE POLICE DEPARTMENT through its Commissioner Patrick Carroll condones the off duty employment of its officers by persons and businesses including persons and businesses within the jurisdiction of The NEW ROCHELLE POLICE DEPARTMENT which inherently creates conflicts of interests between the citizenry of New Rochelle and The NEW ROCHELLE POLICE DEPARTMENT.

73.     The NEW ROCHELLE POLICE DEPARTMENT either had no method instituted to monitor and prevent such self created conflicts of interest or in reckless disregard of justice and fairness chooses not to prevent or eliminate such conflicts to the detriment of its citizens such as SUZANNE RIBANDO.

74.     With regard to SUZANNE RIBANDO, The NEW ROCHELLE POLICE DEPARTMENT actually knew or should have known of the conflict of interest that was created by Detective WILSON, MESSINA and MIRABILE'S handling of the case against SUZANNE RIBANDO, as well as the conflicts of other officers who had similar relationships with PATRICK HICKEY.

75.     Because of their personal working/financial relationship with the complainant PATRICK HICKEY, Detectives WILSON, MIRABILE, and MESSINA improperly influenced others in the NEW ROCHELLE POLICE DEPARTMENT to treat SUZANNE RIBANDO maliciously, severely and with reckless disregard to her civil rights.

76.     Upon information and belief other detectives and officers in the NEW ROCHELLE POLICE DEPARTMENT in addition to JEFFREY WILSON, VINCENT MIRABILE, and MICHAEL MESSINA maintained personal and or working/financial relationships with complainant PATRICK HICKEY causing those detectives and officers to act in a partial and prejudicial manner toward SUZANNE RIBANDO when responding to complaints lodged by PATRICK HICKEY and his wife and at all other times SUZANNE RIBANDO was in the custody of the NEW ROCHELLE POLICE DEPARTMENT.

77.     The misconduct of Detective WILSON and others at the NEW ROCHELLE POLICE DEPARTMENT contributed in causing, without due process, an unconstitutional order of protection to be issued by Honorable Gail B. Rice, a New Rochelle City Court justice against SUZANNE RIBANDO on December 10, 2008 unlawfully and unconstitutionally restricting

SUZANNE RIBANDO from performing her daily life's necessary tasks and preventing SUZANNE RIBANDO from otherwise enjoying her life.  The order issued without a hearing restricted Ms. RIBANDO from walking along the side of her home or entering her own back yard.

78.    Said order was issued secondary to a false complaint made by PATRICK HICKEY on December 9, 2008 for which SUZANNE RIBANDO was arrested without probable cause or any impartial, competent investigation of circumstances upon which the charges based.

79.    On May 24, 2008, SUZANNE RIBANDO was falsely arrested by Detective MESSINA and other members of the NEW ROCHELLE POLICE DEPARTMENT pursuant to a false claim by TRACEY HICKEY that SUZANNE RIBANDO had damaged her vehicle.

80.    Said  NEW ROCHELLE POLICE DEPARTMENT officers and detectives responded in an excessive show of force in numbers disproportionate to the false yet minor allegation that Ms. RIBANDO scratched TRACEY HICKEY'S vehicle.  This excessive use of police resources directed at the plaintiff was designed to terrorize her and send a message.

81.    The responding officers were rude, accusatory and threatening to SUZANNE RIBANDO and failed to perform any competent investigation into the veracity of the claims made against SUZANNE RIBANDO.  Instead NEW ROCHELLE POLICE DEPARTMENT officers and detectives spoke harshly and threateningly to SUZANNE RIBANDO in an effort to get her to admit to damaging the vehicle.

82.     The officers surrounded Ms. RIBANDO on her front lawn while interrogating her. SUZANNE RIBANDO vehemently denied the accusation at the scene. NEW ROCHELLE POLICE DEPARTMENT officers lied about possessing evidence and told SUZANNE RIBANDO that she was captured on video tape, (recorded by the HICKEYS) damaging the vehicle. Such a tactic was an unethical attempt and ruse used by several uniformed officers to get SUZANNE RIBANDO to admit to a crime she did not commit.

83.     The insistence of the officers at the scene that SUZANNE RIBANDO admit guilt because she was allegedly caught in the act on video tape was, in and of itself, a tacit admission that they had no competent objective evidence which supported the allegations.

84.     Clearly the responding officers were predisposed to arresting Ms. RIBANDO when they arrived at the scene. Their interrogation of Ms. RIBANDO was a deliberate attempt to coerce a confession by putting her under duress of accusatory statements and questions without advising her of her Miranda rights.

85.     NEW ROCHELLE POLICE DEPARTMENT'S officers and detectives repeatedly told her that they were reviewing the video tape in the HICKEY home. The officers of the NEW ROCHELLE POLICE DEPARTMENT in an effort to coerce a confession by placing SUZANNE RIBANDO under extreme duress either lied about the existence of the incriminating video tape or did indeed review a tape presented by the HICKEYS which did not corroborate TRACEY HICKEY'S accusation after which NEW ROCHELLE POLICE DEPARTMENT'S

officers destroyed the exculpatory tape or participated in destroying the tape or aided and abetted the HICKEYS in destroying the tape.

86.     Despite her denials of wrongdoing and without probable cause or any objective competent evidence NEW ROCHELLE POLICE DEPARTMENT officers and detectives told SUZANNE RIBANDO that they were placing her under arrest. Due to extreme stress, despair, duress, frustration and fear SUZANNE RIBANDO uttered words to the effect that she wanted to die and kill herself and exposed a pocket knife directed at herself but not toward the surrounding members of the NEW ROCHELLE POLICE DEPARTMENT.

87.     SUZANNE RIBANDO was roughly tackled, handcuffed and taken into custody and booked for Criminal Mischief and other Violations.

88.     SUZANNE RIBANDO, with the direct knowledge of the NEW ROCHELLE POLICE DEPARTMENT was given a court appearance date of May 27, 2008 by the Clerk of the City Court, James Generoso.

89.     Later in that day of May 24, 2008, SUZANNE RIBANDO was transported to the Mt. Vernon Hospital where she was committed against her will for psychological observation and testing.

90.     During her transport while in the custody of officers Michael Ciafardini and Christopher Gugliemo, a comment with ugly racist undertones was made by one of the officers upon their

sighting of a group of high school age African American young men crossing the street. The chilling implications of the language used with impunity by one of the two uniformed police officers in her presence terrified SUZANNE RIBANDO as she sat handcuffed in the rear cage of the police car.

91.     SUZANNE RIBANDO remained in Mt. Vernon Hospital against her will until her discharge on in the late afternoon of May 28, 2008.  Notwithstanding that the Clerk of the City Court of New Rochelle, James Generoso and the NEW ROCHELLE POLICE DEPARTMENT had actual knowledge that SUZANNE RIBANDO was in the hospital and unable to attend her court appearance on May 27, 2008 a warrant was maliciously issued for her arrest for failing to appear in court.

92.     SUZANNE RIBANDO was discharged from Mt. Vernon Hospital in the afternoon of May 28, 2009.  On May 29, 2009, the NEW ROCHELLE POLICE DEPARTMENT acting with malice sent Officers Andolina and Straehle to arrest SUZANNE RIBANDO without regard to her mental or emotional condition when the NEW ROCHELLE POLICE DEPARTMENT had actual knowledge that she had a suicidal event in their presence at the scene of her arrest only days prior.

93.     The NEW ROCHELLE POLICE DEPARTMENT made no effort to determine the status of SUZANNE RIBANDO'S medical/emotional condition and acting without medical consultation or regard to the trauma she would suffer by being handcuffed, taken from her home and placed in a jail cell only days after she suffered a traumatic mental breakdown due to the

duress placed upon, officers of the NEW ROCHELLE POLICE DEPARTMENT proceeded to re-arrest her.


94.     On May 29, 2008 SUZANNE RIBANDO was arrested, handcuffed, taken from her home and placed in a cell and thereafter transferred to Westchester County Jail where she remained incarcerated for a week without any legal justification.


95.     Upon information and belief, members of the NEW ROCHELLE POLICE DEPARTMENT and the Clerk of the City Court of New Rochelle, James Generoso manipulated the process to ensure that SUZANNE RIBANDO suffered what amounted to a prison sentence of one week in county lock up without due process for her alleged failure to appear in court while she was involuntarily committed to the hospital.


96.     On October 13, 2009, at approximately 8:30 pm Ms. RIBANDO heard two men loudly talking and laughing in the front of the HICKEY'S home whereupon she looked out the window and saw PATRICK HICKEY and Detective JEFFREY WILSON loudly speaking and laughing in an animated manner intended to make Ms. RIBANDO aware of their presence.  The presence of the two conspirators HICKEY and WILSON was intended to intimidate and harass Ms. RIBANDO prior to her upcoming trial scheduled for the first week in November of 2009.


97.     On the evening of October 26, 2009 SUZANNE RIBANDO witnessed Detective WILSON drive his vehicle in the dark with the headlights off and park near her home, exit the

vehicle and stand staring at her home pointing  what appeared to be a camera or some other type of electronic device, then get back in his car and leave.


98.     October 27, 2009 at approximately 8:30 pm Ms. RIBANDO spotted Detective WILSON'S vehicle again approach with its headlights off.  WILSON exited the vehicle and walked toward her home. As Ms. RIBANDO exited her front door WILSON hurriedly walked away from her home and turned right at the corner.


99.     As Ms. RIBANDO got into her vehicle and began to drive she witnessed WILSON walk in the opposite direction toward Lyon's Place. Ms. RIBANDO made a turn and came up behind the parked WILSON vehicle and took down the plate number and then parked her car in her driveway.  As she crossed her lawn to enter her home a NEW ROCHELLE POLICE DEPARTMENT car with its lights flashing pulled up in front of her home.  She was then approached by police officer Vincent Marion who told Ms. RIBANDO he was responding to a complaint of loud music from the RIBANDO home.  The complaint was reported as "unfounded" as Officer Marion acknowledged an absence of noise.


100.    On the eve of the criminal trial of this matter, Detective JEFFREY WILSON did stalk, harass and intimidate SUZANNE RIBANDO by appearing around her home in the night hours, lurking, without any legal justification but to harass and intimidate SUZANNE RIBANDO immediately prior to her criminal trial.  Detective WILSON sought to manipulate and create evidence that would be prejudicial to SUZANNE RIBANDO'S defense of the false criminal charges against her. SUZANNE RIBANDO did fear Detective WILSONS presence based on her

knowledge that he had caused her to be falsely arrested at the behest of the HICKEYS in the past.

101.    At various times during the criminal trial of SUZANNE RIBANDO, Detective WILSON repeatedly appeared and stared into the courtroom at SUZANNE RIBANDO from a back hallway connected to the courtroom although he had no rational or lawful purpose to be in or around said courtroom.  Detective WILSON intentionally stared at SUZANNE RIBANDO during her trial in order to continue to harass and intimidate her and cause her emotional distress.

102.    At plaintiff's trial Detective WILSON testified on behalf of the prosecution and did testify untruthfully and in a manner designed to obscure the truth, minimize the obvious conflict of interest of his handling of the case and influence the jury against SUZANNE RIBANDO.

103.    Members of the NEW ROCHELLE POLICE DEPARTMENT did testify on behalf of the prosecution and did testify untruthfully and in a manner designed to obscure the truth and influence the jury against SUZANNE RIBANDO.

104.    All events described herein occurred while Patrick Carroll was the Police Commissioner. Said events were able to occur due to Police Commissioner Carroll's negligence, neglect and failure to hire persons fit for service as police officers and a failure to supervise the officers under his command or to ensure that officers were following proper procedures and obeying the

rules and regulations and code of ethics established by the NEW ROCHELLE POLICE DEPARTMENT.

105.    Police Commissioner Carroll knew or reasonably should have known that members of the NEW ROCHELLE POLICE DEPARTMENT including but not limited to all named herein were engaged in a pattern of misconduct while on duty and off duty which a reasonable persons and/or a competent Police Commissioner would find violated the mandate of NEW ROCHELLE POLICE DEPARTMENT Manual of Procedure, Rules & Regulations and Professional ethics and common decency.

106.    In fact Police Commissioner Carroll knew or should have known that members of his police force were regularly engaged in conduct objectively sexually offensive and intimidating to women and in a very public way held the NEW ROCHELLE POLICE DEPARTMENT out to the general public as intimidators to be feared, of a brutish mentality and demeanor, lewd, sexually offensive, racist, misogynistic and thug like.

107.    Many of the officers who responded to complaints of the HICKEYS, and those who actually arrested Ms. RIBANDO, placing her in handcuffs and putting her into a locked cell were direct participants in a fantasy football website that contained pornography and degrading images of woman that indicated that the site's participating member officers were hatefully misogynistic.

108.   Robert Cox managing editor of the web site *Talk of the Sound* broke the story of departmental misconduct on February 18, 2010 in an article *New Rochelle Commissioner Turns Blind Eye to "Gangster Mentality" in Police Department's High Stakes Fantasy Football*   Mr. Cox wrote:

> *"Dozens of current and former New Rochelle Police officers, primarily from the New Rochelle Police Department's Police And Community Together Unit (P.A.C.T.) have for the past 12 years paid tens of thousands of dollars into a high-stakes fantasy football league with team names, team web sites and helmet decals that glorify a brutish, hard-drinking, gangster mentality among officers within the unit.*
>
> *Teams owned by New Rochelle police officers, including many high ranking officers, reference organized crime, vigilantism, police brutality, alcohol abuse, and a hostile misogynistic attitude towards women in a manner which raises serious questions about the fitness for duty of some NRPD officers and, more broadly, the leadership of New leadership of New Rochelle Police Commissioner Patrick Carroll who has permitted the group to operate on his watch for over a decade."*

This article was known to the NEW ROCHELLE POLICE DEPARTMENT and Police Commissioner Carroll however no changes were made or actions taken to alleviate the toxic atmosphere thereby demonstrating the ongoing neglect and inattention of the  NEW ROCHELLE POLICE DEPARTMENT to police misconduct.

109.   Defendants WILSON and MIRABILE are members on the site as is Detective Ray Andolina.  As indicated in the Cox article the site contained an image of a NEW ROCHELLE

POLICE DEPARTMENT patch which when clicked was a direct link to the official NEW ROCHELLE POLICE DEPARTMENT web site.

110.    A follow up article by Mr. Cox on February 24, 2010 (http://www.newrochelletalk.com/node/1579) detailed the pornographic nature of the site founded by "Police Officers from the New Rochelle N.Y. Police Department".

111.    The site existed within the public domain of the internet for individuals of any age to see for approximately twelve years.  After Mr. Cox broke the story on the league, public access to the site was blocked.  Upon information and belief the site was preserved by *Talk of the Sound* and can be accessed by a link there.

112.    The content of the fantasy football site and its existence in the public domain for over a decade is a damning proclamation by THE NEW ROCHELLE POLICE DEPARTMENT and indicative of the nature and demeanor of some of the officers who conspired to maliciously prosecute SUZANNE RIBANDO.

113.    Ultimately Police Commissioner Carroll's failure to competently hire and supervise members of THE NEW ROCHELLE POLICE DEPARTMENT allowed the officers under his command to engage in conduct that was unlawful and detrimental to the Civil Rights of SUZANNE RIBANDO causing her the damages recited herein.

114.    The counts for which she was acquitted included all acts for which she was initially arrested and those counts she was convicted of were solely those contrived false charges

pertaining to wholly separate dates and allegations, only added later in order to prejudice her defense and deprive her of her right to a fair trial.

115.    The above mentioned orders of protection were obtained by the coercion of a guilty plea to a violation for acts which plaintiff was innocent of but which she was compelled to accept due to the conspiracy against her orchestrated by PATRICK and TRACEY HICKEY, Detective JEFFREY WILSON, Detective MESSINA, Detective MIRABILE and their agents and co-conspirators within THE NEW ROCHELLE POLICE DEPARTMENT, the City Court of New Rochelle and THE CITY OF NEW ROCHELLE.

116.    On April 22, 2009, to avoid the expiration of various Statutes of Limitation Ms. RIBANDO filed a civil lawsuit in New York State Supreme Court, Westchester County against PATRICK and TRACEY HICKEY with numerous causes of action including harassment, intentional infliction of emotional distress, abuse of process and perjury.

117.    Plaintiff SUZANNE RIBANDO sustained defamation of character, loss of liberty, severe mental anguish and emotional distress and violation of her civil rights and was caused to incur financial damages including legal costs for her defense against the false charges and malicious prosecution.  Said damages exceed the jurisdictional limits of all lower courts and SUZANNE RIBANDO will seek punitive damages against the individual defendants.

**FIRST CAUSE OF ACTION**
**FALSE ARREST  42 USC  SECTION 1983**

118.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 117" as though fully set forth at length herein.

119.    On August 22, 2007, defendant MIRABILE  of the NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO and detained her in violation of her civil rights.

120.    Defendant MIRABILE did not have probable cause to believe that SUZANNE RIBANDO committed any crime.

121.    Defendant MIRABILE did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

122.    The August 22, 2007 false arrest and unlawful detention of the plaintiff by the defendant was intentional.

123.    As a result of defendant's conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

124.     Because defendant did not have probable cause to believe that Ms. RIBANDO had committed a crime, her arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

125.     As a result of defendant's conduct, Ms. RIBANDO suffered severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

126.     On May 24, 2008, defendants WILSON and MESSINA of the NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

127.     Defendants WILSON and MESSINA did not have probable cause to believe that SUZANNE RIBANDO committed any crime.

128.     Defendants WILSON and MESSINA did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

129.     The May 24, 2008 false arrest and unlawful detention of the plaintiff by the defendants was intentional.

130.     As a result of defendant's conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

131.    Because defendants did not have probable cause to believe that Ms. RIBANDO had committed a crime, her arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

132.    As a result of defendants' conduct, Ms. RIBANDO suffered severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

133.    On May 29, 2008, defendant WILSON and other officers of the NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

134.    Defendant WILSON and the other officers did not have probable cause to believe that SUZANNE RIBANDO committed any crime.

135.    Defendant WILSON and the other officers did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

136.    The May 29, 2008 false arrest and unlawful detention of the plaintiff by the defendant was intentional.

137.    As a result of defendant's conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

138.   Because defendants did not have probable cause to believe that Ms. RIBANDO had committed a crime, their arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

139.   As a result of defendants' conduct, Ms. RIBANDO suffered severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

140.   On December 9, 2008, defendant WILSON and other officers of THE NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

141.   Defendant WILSON and the other officers did not have probable cause to believe that SUZANNE RIBANDO committed any crime.

142.   Defendant WILSON did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

143.   The December 9, 2008 false arrest and unlawful detention of the plaintiff by the defendant was intentional.

144.   As a result of defendants conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

145.    Because defendant did not have probable cause to believe that Ms. RIBANDO had committed a crime, her arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

146.    As a result of defendant's conduct, Ms. RIBANDO suffered economic damages and severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

147.    On June 8, 2009 defendant WILSON of the NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

148.    Defendant WILSON did not have probable cause to believe that SUZANNE RIBANDO committed any crime.

149.    Defendant WILSON did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

150.    The June 8, 2009 false arrest and unlawful detention of the plaintiff by the defendant was intentional.

151.    As a result of defendant's conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

152.    Because defendants did not have probable cause to believe that Ms. RIBANDO had committed a crime, her arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

153.    As a result of defendants' conduct, Ms. RIBANDO suffered severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

## SECOND CAUSE OF ACTION
## STATE LAW NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION

154.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 153" as though fully set forth at length herein.

155.    The CITY OF NEW ROCHELLE and its employees, servants and or agents acting within the scope of their employment did negligently hire, retain, train and supervise defendants, JEFFREY WILSON, MICHAEL MESSINA, VINCENT MIRABILE, and other officers and detectives who were unfit for the performance of police duties on the aforementioned dates wherein SUZANNE RIBANDO was arrested and incarcerated against her will.

## THIRD CAUSE OF ACTION
## STATE LAW MALICIOUS PROSECUTION

156.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 155" as though fully set forth at length herein.

157.    The acts and conduct of defendants constitute malicious prosecution under the laws of the State of New York.  Upon the criminal complaints of defendants, JEFFREY WILSON, MICHAEL MESSINA, VINCENT MIRABILE, PATRICK HICKEY and, TRACEY HICKEY defendants commenced and continued a criminal prosecution in the City Court of the City of New Rochelle, Westchester County against plaintiff.  There was actual malice and absence of probable cause for the criminal proceeding.  In addition, the proceeding terminated favorably for the plaintiff when, after a jury trial on November 17, 2009 plaintiff was acquitted of all the false charges alleging crimes committed by plaintiff in the City Court of the City of New Rochelle, Westchester County before the Honorable John Colangelo.

158.    The non-criminal actions which plaintiff was alleged to have done in violation of an order of protection resulted in her conviction of two counts of contempt however said Order of Protection was unconstitutional and void "*ab initio*" and therefore said convictions will not stand.

159.    As a result of the conduct of the defendants, SUZANNE RIBANDO suffered and continues to suffer from emotional distress and psychological harm.

160.    Officers, JEFFREY WILSON, MICHAEL MESSINA, VINCENT MIRABILE, were at all times agents, servants and employees acting within the scope of their employment by The CITY OF NEW ROCHELLE and The NEW ROCHELLE POLICE DEPARTMENT which are therefore responsible for their conduct pursuant to the doctrine of *respondeat superior.*

## FOURTH CAUSE OF ACTION
## <u>VIOLATION OF CIVIL RIGHTS</u>
### (42 U.S.C. §1983, §1985)

161.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "160 " as though fully set forth at length herein.

162.    Defendants have deprived plaintiff of her civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 U.S.C. §1983 and §1985.

163.    The arrest and detention of the Plaintiff SUZANNE RIBANDO, by Defendants, JEFFREY WILSON, MICHAEL MESSINA, and VINCENT MIRABILE, and the agents and employees of defendant CITY OF NEW ROCHELLE were in furtherance of a plan and was occasioned by her protected speech, and sex rather than by any objective law enforcement criteria. The individual defendants conspired in bringing a false prosecution in order to conceal their misconduct.

164.    Defendants' conduct deprived plaintiff of her rights pursuant to the First, Fourth and Fourteenth Amendments of the United States Constitution.  Defendants' conduct also deprived plaintiff of her right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

165.    As a result of the conduct of the defendants, Ms. RIBANDO suffered, and continues to suffer economic damages and emotional and psychological harm.

166.    The acts and conduct of all defendants constituted wrongful imprisonment under 42 U.S.C. § 1983.

167.    On all of the dates of arrest indicated herein, defendants, JEFFREY WILSON, MICHAEL MESSINA, and VINCENT MIRABILE arrested SUZANNE RIBANDO and took her to the New Rochelle Police Headquarters, where she was incarcerated against her will.

168.    After defendants arrested SUZANNE RIBANDO on May 29, 2008 she was detained in a locked cell at New Rochelle Police Headquarters against her will and then transferred to the Westchester County Jail in Valhalla, New York where she was incarcerated for a period of seven days.

169.    Defendants subjected plaintiff to wrongful imprisonment and deprivation of liberty without probable cause.

170.    Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable to plaintiff under 42 U.S.C. §1983.

171.    As a result of the conduct of the defendants, Ms. RIBANDO suffered, and continues to suffer, from physical, psychological and financial harm.

## FIFTH CAUSE OF ACTION
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

172.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "170" as though fully set forth at length herein.

173.    The aforesaid conduct of defendants, Detectives WILSON, MESSINA and MIRABILE and PATRICK HICKEY, and TRACEY HICKEY was intentional and/or a disregard of a substantial probability of causing a severe emotional distress to plaintiff.

174.    The aforesaid conduct and acts of defendants, defendants, Detectives WILSON, MESSINA and MIRABILE and PATRICK HICKEY and TRACEY HICKEY were directed towards plaintiff, SUZANNE RIBANDO.

175.    The aforesaid conduct of defendants, defendants, Detectives WILSON, MESSINA and MIRABILE and PATRICK HICKEY and TRACEY HICKEY was done in an extreme, shocking and outrageous manner.

176.    The aforesaid conduct of the defendants Detectives WILSON, MESSINA and MIRABILE and PATRICK HICKEY, TRACEY HICKEY exceeded all reasonable bounds of decency.

177.   PATRICK HICKEY and TRACEY HICKEY conspired with Detectives WILSON, MESSINA and MIRABILE to use their children to incite, alarm and justify the police department into responding and reacting to their otherwise benign false claims.

178.   The aforesaid conduct of defendants, PATRICK HICKEY and TRACEY HICKEY, terrorized, frightened and tormented plaintiff, causing her to fear for her life and or fear physical injury from defendants.

179.   Defendants did intend to frighten, terrorize and torment plaintiff, and cause her to fear for her life and or fear physical injury from defendants.

180.   As a direct result of defendants, PATRICK HICKEY and TRACEY HICKEY, intentionally inflicting mental distress to plaintiff, they have caused various damages to plaintiff, including, but not limited to:

     a.     pain, suffering, embarrassment, humiliation, anxiety, fear, phobia, suicidal thoughts and mental stress and distress;

     b.     psychiatric bills, medical bills, hospital bills, medical expenses, deductibles, co-pays, prescriptions and other costs for medical diagnosis and treatment;

     c.     disability, lost wages and/or the loss of earning potential;

     d.     loss of the enjoyment of life;

     e.     incurred legal fees.

181.    That by reason of PATRICK and TRACEY HICKEY'S reckless, willful and deliberate actions in terrorizing, tormenting, harassing, threatening, cruel and inhuman actions in threatening, intimidating and filing false claims against SUZANNE RIBANDO causing her to sustain conscious pain, mental and emotional stress and anguish, trauma and distress, SUZANNE RIBANDO is entitled to punitive damages against PATRICK HICKEY and TRACEY HICKEY.

182.    Said conduct amounts to the tort of intentional infliction of mental distress.

## SIXTH CAUSE OF ACTION
## PERJURY

183.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "182" as though fully set forth at length herein.

184.    At all material times, the State of New York provides for a private right of action based upon a penal statute and that a private civil action may be brought by a member of the class protected by the penal statute. Plaintiff is a member of the class protected by the statute mentioned hereinafter.

185.    Said civil action for the violation of a statutory duty may be brought by any person injured thereby. Plaintiff has been damaged by the violation of the statute, as set forth in this complaint.

186.    New York Penal Law '210.15 provides that if a person is guilty of perjury in the first degree when he swears falsely and when his false statement (a) consists of testimony, and (b) is material to the action, proceeding or matter in which it is made.

187.    New York Penal Law 210.10 provides that if a person is guilty of perjury in the second degree when he swears falsely and when his false statement is (a) made in a subscribed written instrument for which an oath is required by law, and (b) made with intent to mislead a public servant in the performance of his official functions, and (c) material to the action, proceeding or matter involved.

188.    New York Penal Law '210.05 provides that a person is guilty of perjury in the third degree when he swears falsely.

189.    The conduct of defendants averred hereinbefore constitutes a violation of the above statutes and a violation of duties as set forth in the above statutes.

190.    As a direct result of defendants' violation of New York statutes and statutory duties, plaintiff, SUZANNE RIBANDO, has sustained harm, injuries and damages to her person, property and business, all of which were caused in fact by defendants, including but not limited to:

    a.    pain, suffering, embarrassment, humiliation, anxiety, fear, phobia, suicidal thoughts and mental stress and distress;

b.      legal fees, bail costs, psychiatric bills, medical bills, hospital bills, medical expenses, deductibles, co-pays, prescriptions and other costs for medical diagnosis and treatment;

c.      disability, lost wages and/or the loss of earning potential;

d.      loss of the enjoyment of life;

e.      incurred legal fees.

191.    That by reason of Detectives WILSON'S, MESSINA'S, and MIRABILE'S, PATRICK HICKEY'S and TRACEY HICKEY'S reckless, willful and deliberate actions in terrorizing, tormenting, harassing, threatening, cruel and inhuman actions in threatening, intimidating and filing false claims against SUZANNE RIBANDO causing her to sustain conscious pain, mental and emotional stress and anguish, trauma and distress, SUZANNE RIBANDO is entitled to punitive damages against those Defendants.

## SEVENTH CAUSE OF ACTION
## CONSPIRACY

192.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "190" as though fully set forth at length herein.

193.    At all material times, the State of New York provides for a private right of action based upon a penal statute and that the private civil action may be brought by a member of the class protected by the penal statute. Plaintiff is a member of the class protected by the statute mentioned hereinafter.

194.    Said civil action for the violation of a statutory duty may be brought by any person injured thereby.  Plaintiff has been damaged by the violation of the statute, as set forth in this complaint.

195.    New York Penal Law '105.00 provides that a person is guilty of conspiracy in the sixth degree when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.

196.    The conduct of defendants averred hereinbefore constitutes a violation of the above statute and violation of duties set forth in the above statute.

197.    As a direct result of defendant's violation of New York statutes and statutory duties, plaintiff, SUZANNE RIBANDO, has sustained harm, injuries and damages to her person, property and business, all of which were caused in fact by defendants, including but not limited to:

    a.      pain, suffering, embarrassment, humiliation, anxiety, fear, phobia, suicidal thoughts and mental stress and distress;

    b.      legal fees, bail costs, psychiatric bills, medical bills, hospital bills, medical expenses, deductibles, co-pays, prescriptions and other costs for medical diagnosis and treatment;

    c.      disability, lost wages and/or the loss of earning potential;

    d.      loss of the enjoyment of life;

    e.      incurred legal fees.

198.   That by reason of Detectives WILSON'S, MESSINA'S, and MIRABILE'S, PATRICK HICKEY'S and TRACEY HICKEY'S reckless, willful and deliberate actions in terrorizing, tormenting, harassing, threatening, cruel and inhuman actions in threatening, intimidating and filing false claims against SUZANNE RIBANDO causing her to sustain conscious pain, mental and emotional stress and anguish, trauma and distress, SUZANNE RIBANDO is entitled to punitive damages against those Defendants.

### EIGHTH CAUSE OF ACTION UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AGAINST THE CITY OF NEW ROCHELLE, THE NEW ROCHELLE POLICE DEPARTMENT, PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA

199.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "198" as though fully set forth at length herein.

200.   At all relevant times SUZANNE RIBANDO was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1964(c).

201.   PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON and MICHAEL MESSINA are "persons" within the meaning of 18 U.S.C. §1962(c).

202.   THE CITY OF NEW ROCHELLE, PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON and MICHAEL MESSINA have violated 18 U.S.C. 1961 (1), by engaging in "racketeering activity"

203.   At all relevant times, the enterprise,  the CITY OF NEW ROCHELLE, and its agents JEFFREY WILSON and MICHAEL MESSINA, in their capacity  as  law enforcers or as a detectives, were an enterprise within the meaning of 18 U.S.C. §1961 (4).

204.   At all relevant times the enterprise, THE CITY OF NEW ROCHELLE and specifically the NEW ROCHELLE POLICE DEPARTMENT, was engaged in, and its activities affected interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §1962 ( c ).

205.   At all relevant times the enterprise, THE CITY OF NEW ROCHELLE and specifically THE NEW ROCHELLE POLICE DEPARTMENT, permitted, sanctioned and officially encouraged an atmosphere of sexual bias, lawlessness and harassment on behalf of its law enforcement officers.

206.   At all relevant times the enterprise, THE CITY OF NEW ROCHELLE and specifically THE NEW ROCHELLE POLICE DEPARTMENT, allowed, permitted, sanctioned and officially encouraged a "Fantasy Football" website which depicted acts of violence, pornography and blatant stereotypical bias against women and minorities. This website had links both to the official sites of THE NEW ROCHELLE POLICE DEPARTMENT and THE CITY OF NEW ROCHELLE and to other sites of a violent or pornographic nature.

207.   As members of the enterprise JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA specifically participated in and operated the "Fantasy Football" league and website which glorified and encouraged gender and other bias and violence.

208.   At various times during their official contacts with the plaintiff JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA have made it clear by word and gesture that they demean and disrespect the plaintiff due to her gender and social status as a single woman. This is merely an extension of the official position of THE NEW ROCHELLE POLICE DEPARTMENT which tolerates and encourages such attitudes and conduct. This official bias is a violation of a number of Federal Statutes intended to protect individuals such as the plaintiff.

209.   The multiple acts of PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA  in attempting to harass, intimidate, imprison and maliciously prosecute the plaintiff as described in this complaint, beginning in the summer of 2006, and continuing to November 17, 2009,  the acceptance and solicitation of bribes as defined by the New York State Penal Law, the fabrication of evidence, the use of electronic communications to further the scheme, the corruption of the law enforcement system which amounts to obstruction of justice, (18 U.S.C. 1961 (1), 1510),  all of these activities constitute a "pattern of racketeering" activities within the meaning of 18 U.S.C.1961(5).

210.   The effective date when the racketeering activity took place in THE CITY OF NEW ROCHELLE was from the summer of 2006 through November 2009, therefore these dates are within the statute of limitations provided by RICO.

## PREDICATE ACTS

211.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "210" as though fully set forth at length herein.

212.    In the summer months of 2006, PATRICK and TRACEY HICKEY began their plot, scheme and campaign to harass their neighbor the plaintiff and drive her from her home.

213.    In or around May/June 2005 prior to the 2006 onset of the plan to harass the plaintiff, defendant PATRICK HICKEY had recommended for employment and then supervised in employment, members of THE NEW ROCHELLE POLICE DEPARTMENT and their families in off duty/part time jobs at Beckwith Pointe, an exclusive catering hall and beach club on Davenport Road in New Rochelle.

214.    At all times hereinafter mentioned PATRICK HICKEY held an executive position at Beckwith Pointe.  Mr. HICKEY used Beckwith Pointe, and his association with the owners, agents, employees and vendors, as a patronage mill, bestowing favors, perks and jobs upon members of THE NEW ROCHELLE POLICE DEPARTMENT, members of the New Rochelle City Court system and their families and others in the municipal government of New Rochelle and their families.

215.    Mr. HICKEY used his position at Beckwith Point to secure below market rates or extra services or giveaways for those employed at THE NEW ROCHELLE POLICE DEPARTMENT, The City Court of New Rochelle, and the municipal government of New Rochelle for events such as retirement dinners, holiday parties, award ceremonies, religious celebrations and family celebrations.

216.   During the course of the conspiracy PATRICK and TRACEY HICKEY used their cellular telephones and residential land lines to call the NEW ROCHELLE POLICE DEPARTMENT and make unfounded complaints against SUZANNE RIBANDO.  PATRICK HICKEY was provided the cellular telephone numbers of detectives MIRABILE, WILSON and MESSINA and made calls to them to effect, further and advance the conspiracy against SUZANNE RIBANDO.

217.   Acting in concert PATRICK and TRACEY HICKEY collectively called in false complaints to the NEW ROCHELLE POLICE DEPARTMENT on dates including but not limited to December 13, 2006, May 9, 2007, June 2007 and August 14, 2007, August 22, 2007, March 9, 2008, March 11, 2008 April 24, 2008, May 9, 2008, May 24, 2008 December 9, 2008, April 1, 2009, April 3, 2009, May 28, 2009 June 1, 2009.

218.   During the period in which he lodged these false complaints PATRICK HICKEY had multiple discussions over the telephone and in person with members of the NEW ROCHELLE POLICE DEPARTMENT including Detectives WILSON, MESSINA and MIRABILE about how he could best effectuate the arrest, imprisonment and malicious prosecutions of SUZANNE RIBANDO.

219.   In his supervisory capacity at Beckwith Pointe PATRICK HICKEY was able to influence or set the schedules of the part time employees at will and so was able to steer income to those he favored.  PATRICK HICKEY subsequently used his ability to create and or influence employment by direct hire or hire by influence and rewarded favored employees as a means to

secure the cooperation of members of the NEW ROCHELLE POLICE DEPARTMENT including WILSON, MIRABILE and MESSINA and employees of the City Court of New Rochelle and employees of the municipal government of New Rochelle in his scheme.  As a result WILSON, MIRABILE and MESSINA and other individual members of the NEW ROCHELLE POLICE DEPARTMENT and New Rochelle City Court took actions against the plaintiff which were otherwise illogical, unlawful and unfounded and were done merely to curry favor and obtain financial gain from PATRICK HICKEY.

220.    PATRICK HICKEY'S employment of off duty police officers and family members of New Rochelle City Court employees constituted a benefit "of value" and their acceptance of that benefit as a reward for the harassment and arrests of the plaintiff constituted a felony bribery offense under Article 200 of the New York State Penal Law and within the meaning of RICO, 18 U.S.C. §1961(1)a.

221.    In the spring of 2007, defendant WILSON was contacted by telephone by defendant PATRICK HICKEY and enlisted to participate in the ongoing harassment of the plaintiff.   As a result in June of 2007 WILSON made a personal visit to the plaintiff's home to confront and threaten her. WILSON had no official involvement in the police investigation of the incidents between the plaintiff and the HICKEYS and solely involved himself to gain a benefit from PATRICK HICKEY. In the course of that discussion WILSON used implied threats to stifle RIBANDO's attempt to utilize her First Amendment right to complain about the conduct of the HICKEYS.

222.    On or about August 22, 2007 Detective VINCENT MIRABLE had a meeting with PATRICK HICKEY during which a false and misleading narrative was crafted solely to create a basis for a false arrest of the plaintiff.  The creation of this false narrative was intended to misuse the legal system and obstruct justice as defined in 18 U.S.C. 1961 (1), 1510.

223.    On or about August 22, 2007 Detective VINCENT MIRABLE telephoned the plaintiff's home to arrange a meeting with the plaintiff on false pretenses solely to effect an arrest of the plaintiff based upon the abovementioned narrative.

224.    On May 24, 2008 plaintiff was again falsely arrested by Detectives WILSON and MESSINA at a time when they were both regularly employed at Beckwith Pointe under the direction and supervision of defendant PATRICK HICKEY. The involvement of these New Rochelle Police Department Detectives in the investigation of what would be considered a minor offense was highly unusual and in violation of normal procedures and protocols. In inserting themselves into this minor investigation these individuals used the enterprise of the CITY OF NEW ROCHELLE for a corrupt purpose.

225.    Detectives WILSON and MESSINA  made this improper arrest as a quid pro quo for the defendant PATRICK HICKEY's ongoing employment of them and said conduct constituted a felony bribery offense in violation of  Article 200 of the New York State Penal Law and within the meaning of RICO, 18 U.S.C. §1961(1)a.

226.   NEW ROCHELLE City Court Clerk JAMES GENEROSO has a daughter who is employed at Beckwith Pointe under the supervision of defendant PATRICK HICKEY. GENEROSO is very familiar with PATRICK HICKEY and was aware of the dispute with RIBANDO. As a result of her unlawful arrest on May 24, 2008, SUZANNE RIBANDO suffered a mental breakdown.  After she was processed at the courthouse and given a court appearance date of May 27, 2008, she was taken by members of THE NEW ROCHELLE POLICE DEPARTMENT to the psychiatric unit at Mt. Vernon Hospital for evaluation. Ms. Ribando remained involuntarily committed at Mt. Vernon Hospital until her discharge on the afternoon of May 28, 2008. As a result on May 27, 2008, plaintiff was physically unable to appear at her court hearing due to her involuntary hospitalization.

227.   JAMES GENEROSO acting in his capacity as Clerk of the Court was advised and was made aware of plaintiff's whereabouts and her inability to appear. Despite having this knowledge and to aid PATRICK HICKEY in his conspiracy against the plaintiff, James Generoso caused an improper and unfounded bench warrant to issue for the plaintiff.   On May 29, 2008, as a result of the lodging of the improper arrest warrant plaintiff was arrested and wrongfully imprisoned in the Westchester County Jail in Valhalla for seven days.

228.   James Generoso caused the issuance of this improper warrant as a quid pro quo for the defendant PATRICK HICKEY's patronage, including the ongoing employment of Generoso's daughter and said conduct constituted a felony bribery offense in violation of  Article 200 of the New York State Penal Law and within the meaning of RICO, 18 U.S.C. §1961(1)a.

229.    On December 9, 2008 defendant WILSON again arrested the plaintiff.  This subsequent arrest was done again without probable cause or legal basis and was solely to serve the interests of PATRICK HICKEY. Said conduct done in exchange for HICKEY's patronage, constituted a felony bribery offense in violation of  Article 200 of the New York State Penal Law and within the meaning of RICO, 18 U.S.C. §1961(1)a.


230.    On June 8, 2009 defendants WILSON and MESSINA again arrested the plaintiff.  This subsequent arrest was done again without probable cause and solely to serve the interests of PATRICK HICKEY and in return for his valuable patronage. Said conduct constituted a felony bribery offense in violation of Article 200 of the New York State Penal Law and within the meaning of RICO, 18 U.S.C. §1961(1)a.


231.    October 27, 2009 defendant WILSON caused or conspired over the telephone to initiate a false and fraudulent noise complaint against plaintiff.  Said noise complaint was called in by plaintiff's neighbor however when the police arrived to investigate WILSON was already present at the scene. The noise complaint was unfounded however upon information and belief it was orchestrated by WILSON and PATRICK HICKEY in order to further the conspiracy and constituted Wire Fraud.


232.    At all relevant times, PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA  and other individuals named herein participated directly or indirectly in the racketeering activity in the conduct of the enterprise's

affairs through a pattern of "racketeering activity," within the meaning of RICO 18 U.S.C. §1961(5) in violation of 18 U.S.C. 1962 ( c).

233. The RICO activity during this period as participated in by these named defendants and others included other acts which did not directly affect this plaintiff but served the goals of the conspiracy. These acts include the NEW ROCHELLE POLICE DEPARTMENT's February 2008 attempted cover-up of a rape allegation against Sergeant David Rodriguez and an attempt to discredit the teen rape victim; the March 2008 cover up and destruction of evidence by Detective Andolina and other's at NEW ROCHELLE POLICE DEPARTMENT of a Middle School "sexting" incident in December of 2008 involving security guard Donna Henry's dissemination of nude photographs of an underage student at Albert Leonard Middle School to City of New Rochelle School district employees and an administrative employee at New Rochelle City Hall; the March 2009 cover up by Detective Andolina, of an assault of an eighth grade student by a security guard at E. Young Middle School; the attempt, in November 2008, by Detective Buono to threaten and intimidate the aforementioned reporter Robert Cox, in order to suppress publishing of a story exposing violation of  New York State Law by the Isaac E Young Middle School Principal Anthony Bongo Jr. who is a relative/friend of  Detective Buono;  the February 2011 intimidation and threat toward  *Talk of the Sound*  Contributor James O'Toole and reporter Robert Cox, by officer Ryan Downs in an attempt to chill and suppress Mr. Cox's First Amendment rights to publish, photograph or report on the activities of the NEW ROCHELLE POLICE DEPARTMENT, including police misconduct.

234.    The acts of racketeering activity described above, constituted a "pattern of racketeering activity," within the meaning of 18 U.S.C. §(5).  The acts alleged were related to each other by virtue of common participants, PATRICK HICKEY, TRACEY HICKEY, VINCENT MIRABILE, JEFFREY WILSON and MICHAEL MESSINA, each, associated with the "enterprise," THE CITY OF NEW ROCHELLE and its POLICE DEPARTMENT.  The acts of malicious prosecution were related to each other by virtue of common participants, common victim, SUZANNE RIBANDO, a common method of commission, the planting or fabrication of evidence to threaten Plaintiff with prison in exchange for goods and money.


235.    As a direct and proximate cause of the Defendants PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA's racketeering conduct, Plaintiff SUZANNE RIBANDO was forced to retain attorneys, and thereby incurred legal expenses as financial losses. The sum total of legal expenses will be proved at trial.


236.    As a result of Defendants PATRICK HICKEY, TRACEY HICKEY, JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA's conduct Plaintiff suffered great anxiety, fear for her life, depression, loss of faith in the criminal justice system, insomnia, and emotional turmoil.


237.    As a direct and proximate cause of the bribery inspired activity on behalf of the HICKEY's by police detectives JEFFREY WILSON, VINCENT MIRABILE and MICHAEL MESSINA and other employees of the enterprise, THE CITY OF NEW ROCHELLE the

plaintiff was deprived of her liberty and suffered various expenses and financial losses, the full extent of which and the overall expenses incurred will more fully be presented at the trial of this cause.

238.    Pursuant to 18 U.S.C. §1964 (c), the plaintiff is entitled to recover threefold damages, plus costs of this action, and attorney's fees from the defendants.

**WHEREFORE, plaintiff prays for:**

a.      Property loss to Plaintiff which are costs incurred in legal expenses, investigation expenses, amounts to be proved at the trial of this cause, multiplied by three,  as provided by statute, (18 U.S.C.§ 1964 ( c ).

b.      Reasonable attorneys' fees the sum  total to be computed at the conclusion of the trial of this cause, at a rate commensurate with Plaintiff's attorneys experience, nature and length of time involved, ( 18 U.S.C. § 1964 ( c ).

c.      Costs of litigation, ( 18 U.S.C. § 1964 ( c ).

d.      Any other further relief the court deems just and proper.

## <u>JURY DEMAND</u>

239.    Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

(a)        compensatory damages in an amount to be determined at trial

(b)        punitive damages in an amount to be determined at trial;

(c)        reasonable attorneys' fees;

(d)        costs and expenses; and

(e)        such other and further relief as is just and proper.


 Dated:      New York, New York
             February 11, 2011


____/S/_____
Michael J. Galluzzi (MG0661)
CASCIONE, GALLUZZI, LLC
20 Vesey Street, Suite 1100
New York, New York  10007
(212) 964-9640
(212) 406-2857 (facsimile)