UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUZANNE RIBANDO,

        Plaintiff,

-against-

THE CITY OF NEW ROCHELLE, THE NEW
ROCHELLE POLICE DEPARTMENT,
JEFFREY WILSON, MICHAEL MESSINA,
VINCENT MIRABILE, PATRICK HICKEY
and TRACEY HICKEY,

        Defendants.

-------------------------------------------------------------X

**AMENDED
COMPLAINT
(Jury Trial Demanded)**

Docket No.: 11-CV-0976 (KMK)

ECF CASE



Plaintiff SUZANNE RIBANDO, by her attorneys, CASCIONE, GALLUZZI, LLC,

complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action to recover compensatory damages, punitive damages and attorney's fees

arising out of defendants' violation of plaintiff's rights as secured by the Civil Rights Act, 42

U.S.C. 1983, 1985 and 1988 and of rights secured by the Fourth and Fourteenth Amendments to

the United States Constitution and the laws of the State of New York.

2.    All of the incidents occurred in the City of New Rochelle, New York at various locations

including but not limited to the home and property of the plaintiff SUZANNE RIBANDO at 106

Stephenson Boulevard, New Rochelle New York, 110 Stephenson Boulevard, New Rochelle

New York, New Rochelle Police Department 475 North Avenue, New Rochelle New York

10801, New Rochelle City Courthouse, 475 North Avenue, New Rochelle, New York 10801 and

Beckwith Pointe, 700 Davenport Avenue, New Rochelle New York 10805.

3.      All of the incidents were caused in whole or in part by employees, agents and servants of

THE CITY OF NEW ROCHELLE including Police Officers, Detectives and the Clerk of the

City Court James Generoso.

4.      The baseless false arrests, harassment and malicious prosecution, engaged in by a

conspiracy of the defendants upon SUZANNE RIBANDO, began prior to and in or around

November 2007 and was the result of a conspiracy between New Rochelle residents PATRICK

and TRACEY HICKEY and employees, agents and servants of THE CITY OF NEW

ROCHELLE including members of the NEW ROCHELLE POLICE DEPARTMENT and Clerk

of the City Court James Generoso.

5.      On all of the occasions listed herein, including but not limited to May 24, 2008, May 29,

2008 and December 9, 2008, members of the New Rochelle Police Department, acting under the

color of state law, arrested plaintiff SUZANNE RIBANDO without probable cause and

subjected her to harassment, intimidation and humiliation during the course of her arrests and

incarcerations.  Defendants deprived plaintiff of her constitutional and common law rights during

the course of her arrests.  Defendants deprived plaintiff of her constitutional and common law

rights when they initiated the unjustifiable arrests and malicious prosecutions of plaintiff and

unlawfully confined the plaintiff.

## JURISDICTION AND VENUE

6.     Jurisdiction is founded upon the existence of a federal question.

7.     Pursuant to 28 U.S.C. 1331 and 1343, jurisdiction is proper as plaintiff's claims arise under federal law. Pursuant to 28 U.S.C. 1367, jurisdiction is proper as to the claims of plaintiff arising under the common law of the State of New York. Pursuant to 28 U.S.C. 1391(b) venue is proper as the acts complained of occurred in the State of New York and County of Westchester.

8.     That an award of attorney's fees is requested and is appropriate pursuant to 42 U.S.C. 1988.

## PARTIES

9.     Plaintiff SUZANNE RIBANDO is a citizen of the United States. She resides in the State of New York and City of New Rochelle in Westchester County. Ms. RIBANDO at all relevant times lived with her parents Betty and James Ribando at 106 Stephenson Boulevard. Ms. RIBANDO has lived in the home since her birth more than thirty seven years ago. Ms. RIBANDO is an Iona College graduate who had never been arrested and had no criminal record prior to the commencement of the conspiracy to harass her initiated by the defendants named herein.

10.     PATRICK HICKEY, a resident of the State of New York at all times relevant to this complaint was the initiator of the conspiracy and a frequent complaining witness against plaintiff SUZANNE RIBANDO. He utilized his business/social relationships within the NEW ROCHELLE POLICE DEPARTMENT, the City Court of New Rochelle and with other employees, agents and servants of the municipal government of the CITY OF NEW ROCHELLE to harass, intimidate, arrest and maliciously prosecute SUZANNE RIBANDO.

11.     TRACEY HICKEY, was, at all times hereinafter mentioned, the wife of PATRICK HICKEY and also a resident of the State of New York and City of New Rochelle in Westchester County and at various times relevant to this complaint was also a complaining witness against plaintiff SUZANNE RIBANDO. By virtue of her marriage to PATRICK HICKEY she utilized his business/social relationships within the NEW ROCHELLE POLICE DEPARTMENT, The City Court of New Rochelle and other employees, agents and servants of them municipal government of the CITY OF NEW ROCHELLEE to harass, intimidate, arrest and maliciously prosecute SUZANNE RIBANDO.

12.     PATRICK and TRACEY HICKEY have resided at 110 Stephenson Boulevard in the City of New Rochelle since in or around 2004.

13.     Defendant CITY OF NEW ROCHELLE is a municipal corporate sub division organized pursuant to the laws of the State of New York.  It has all the powers vested in it by the laws of the State of New York and the Charter of the City of New Rochelle.

14.   THE CITY OF NEW ROCHELLE is authorized to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. It assumed the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NEW ROCHELLE POLICE DEPARTMENT.

15.   James Generoso (hereinafter also Generoso), at all times relevant to this complaint, was the City Court Clerk in the City of New Rochelle, New York. As such he had discretionary decision making authority in the courts of the City of New Rochelle regarding the calendaring of criminal cases, the scheduling of arraignments and the assignment of cases to various judges.

16.   Upon information and belief Generoso, at all times relevant to this complaint and at times prior thereto maintained a business/social relationship with complainant PATRICK HICKEY outside of his duties as Court Clerk in the City of New Rochelle, New York.

17.   Upon information and belief, at all times relevant to this complaint and at times prior thereto Generoso's daughter was hired and/or supervised by PATRICK HICKEY and was employed at Beckwith Pointe, a catering facility located in New Rochelle.

18.   JEFFREY WILSON, (hereinafter WILSON), at all times relevant to this complaint was a Detective in THE NEW ROCHELLE POLICE DEPARTMENT.

19.     Upon information and belief at all times relevant to this complaint and at times prior thereto, WILSON maintained a business/social relationship with complainant PATRICK HICKEY by virtue of the fact that WILSON was employed by Beckwith Pointe, the catering facility located in New Rochelle where PATRICK HICKEY was chief chef and supervisor. WILSON'S off duty employment was directly approved by New Rochelle Police Commissioner Patrick Carroll.

20.     MICHAEL MESSINA, (hereinafter MESSINA), at all times relevant to this complaint was a Detective in THE NEW ROCHELLE POLICE DEPARTMENT.

21.     Upon information and belief at all times relevant to this complaint and at times prior thereto, MESSINA maintained a business/social relationship with complainant PATRICK HICKEY by virtue of the fact that MESSINA was employed by Beckwith Pointe. MESSINA'S off duty employment was directly approved by New Rochelle Police Commissioner Patrick Carroll.

22.     VINCENT MIRABILE, Titus Alexander, Raymond Andolina, Thomas Straehle, Tim Adrian, Lawrence Bornholtz, Michael Bota, Paul D'Erasmo, Dalberto Aguilar, Detective Jason Buono, Michael Ciarfardini, Christopher Gugliemo, Vincent Zazzarino, Ted Pitzel, Ryan Downs, Vincent Marion, Yadilene Machado, John Young, Vincent Marco, Melvin Molina, Joseph Salerno, John Inzeo and Ferguson at all times relevant to this complaint were police officers or detectives in the New Rochelle Police Department.

23.     Dana Ziogas, (hereinafter Ziogas), at all times relevant to this complaint was a citizen of the United State of America, residing in the State of New York and City of New Rochelle in Westchester County.  Ziogas resides at 112 Stephenson Boulevard in New Rochelle.  The Ziogas and HICKEY residences are on contiguous lots and share a property line with the HICKEY home separating the Ziogas property from the RIBANDO residence.

24.     WILSON, MIRABILE, and MESSINA, at all relevant times herein were acting within the scope of their employment and under color of state law in the course and scope of their duties and functions as agents, servants and employees and officers of THE CITY OF NEW ROCHELLE POLICE DEPARTMENT and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

25.     WILSON, MIRABILE, and MESSINA, were acting at all times relevant herein, with the power and authority vested in them as officers, agents and employees of THE NEW ROCHELLE POLICE DEPARTMENT and incidental to their lawful pursuit of their duties as officers, employees and agents of THE NEW ROCHELLE POLICE DEPARTMENT.

26.     On May 24, 2008 plaintiff was falsely arrested without probable cause by Detectives WILSON and MESSINA and was improperly charged with the Offense of Criminal Mischief in the Fourth Degree, a violation of Penal Law 140. 00 as well as Criminal Contempt in the Second Degree, a violation of Penal Law 215.50.

27.    On May 24, 2008 plaintiff was again improperly charged with the Offense of Criminal Contempt in the Second Degree, a violation of Penal Law 215.50, for acts alleged to have occurred on February 23 or February 24, 2008 although plaintiff was not arrested or charged at the time of the alleged crimes.

28.    On May 24, 2008 plaintiff was also improperly charged with the Offense of Criminal Contempt in the Second Degree, a violation of Penal Law 215.50, for acts alleged to have occurred on April 23, 2008 although claimant was not arrested or charged at the time of the alleged crime.

29.    On May 29, 2008 plaintiff was falsely arrested by Detective WILSON, and improperly charged with Criminal Mischief in the Second Degree section 145.10, a Class D Felony. RIBANDO was also improperly charged with the offense of Criminal Contempt in the Second Degree, a violation of Penal Law 215.50 pursuant to an arrest warrant improperly issued on May 27, 2008. Thereafter, plaintiff was incarcerated against her will for an extended period of time.

30.    On December 9, 2008 plaintiff was falsely arrested by Detective WILSON and improperly charged with Criminal Mischief in the Fourth Degree, a violation of Penal Law 145.00 01 and Criminal Contempt in the Second Degree, a violation of Penal Law 215.00.

31.    On June 8, 2009 plaintiff was falsely arrested by Detective WILSON and improperly charged with Harassment in the Second Degree, a violation of Penal Law 240.26 for unsubstantiated allegations that she threw dog feces over a fence allegedly occurred on or about

and between January 2009 and April 2009 although plaintiff was not arrested or charged for same until June 8, 2009.

32.     In November of 2009 a trial of all charges was held in the City Court of New Rochelle before the Honorable John Colangelo and on November 17, 2009, after due deliberation the jury acquitted SUZANNE RIBANDO of all criminal charges with the exception of two violations of the order of protection which are not claimed herein, specifically occurring on May 28, 2009 and April 23, 2009.

33.     A Notice of Claim was filed January 11, 2010 and an amended Notice of Claim was filed in February 2010.  A hearing pursuant to General Municipal Law Section 50-h has been held.

## FACTUAL NARRATIVE

34.     The HICKEY and RIBANDO residences are on contiguous lots and share a property line. Their back yards re contiguous and at all relevant times were separated by a wooden stockade style fence.

35.     In or around the summer of 2006 the HICKEYS' two young boys were kicking a ball against the stockade fence which separated their back yard from the RIBANDO back yard causing Ms. RIBANDO'S two small dogs to become agitated and bark.  Ms. RIBANDO called out to the boys to stop kicking the ball against the fence.  Thereafter PATRICK HICKEY yelled obscenities at Ms. RIBANDO and ordered her not to speak to his children.  From that point on

PATRICK and TRACEY HICKEY and their two children commenced a pattern of tormenting Ms. RIBANDO'S dogs and otherwise harassing Ms. RIBANDO.

36.     Upon information and belief at all times relevant hereto PATRICK HICKEY was in an executive position at Beckwith Pointe located on Davenport Avenue in New Rochelle, New York.  Upon information and belief Mr. HICKEY used Beckwith Pointe, and his association with the owners, agents, employees and vendors, as a patronage mill, thereby bestowing favors, perks and jobs upon members of THE NEW ROCHELLE POLICE DEPARTMENT, members of the New Rochelle City Court system and their families and others in the municipal government of New Rochelle.   Upon information and belief, Mr. HICKEY'S position at Beckwith Pointe combined with his obsessive efforts to use the police to harass and intimidate Ms. RIBANDO directly or indirectly influenced/caused the defendants named herein and others to maliciously prosecute SUZANNE RIBANDO.

37.     As part of their conspiracy to drive plaintiff from her home, PATRICK and TRACEY HICKEY repeatedly called the NEW ROCHELLE POLICE DEPARTMENT to make unfounded complaints against SUZANNE RIBANDO.   Unbeknownst to SUZANNE RIBANDO, PATRICK HICKEY had social and/or business relationships with several New Rochelle Police Officers as well as persons in the municipal government of New Rochelle and in the City Court of New Rochelle.  Utilizing his aforementioned connections PATRICK HICKEY and TRACEY HICKEY began a campaign to have SUZANNE RIBANDO arrested.

38.     Collectively the HICKEYS called in false complaints against plaintiff to THE NEW
ROCHELLE POLICE DEPARTMENT on dates including but not limited to March 9, 2008,
March 11, 2008, April 24, 2008, May 9, 2008, May 24, 2008, December 9, 2008, April 1, 2009
and April 3, 2009.


39.     Upon information and belief PATRICK HICKEY had multiple discussions over the
telephone and in person with members of THE NEW ROCHELLE POLICE DEPARTMENT
about how he could effectuate the arrest of SUZANNE RIBANDO.  The in person conversations
were conducted at places including but not limited to, the HICKEY residence, Beckwith Pointe,
The City Court of New Rochelle and offices of THE NEW ROCHELLE POLICE
DEPARMENT.


40.     Detectives WILSON, MESSINA and MIRABILE with malicious intent and with reckless
disregard for the civil rights of SUZANNE RIBANDO insinuated themselves into the cases on
behalf of the complainant PATRICK HICKEY and did conspire with others at THE NEW
ROCHELLE POLICE DEPARTMENT and PATRICK HICKEY (and with PATRICK
HICKEY'S wife, TRACEY HICKEY who is also a criminal complainant) and certain
individuals at the City Court of New Rochelle, to harass, intimidate, humiliate, arrest and
maliciously prosecute SUZANNE RIBANDO and in so doing Detectives WILSON, MESSINA
and MIRABILE and others at THE NEW ROCHELLE POLICE DEPARTMENT abused
process and violated the civil rights of SUZANNE RIBANDO.

41.     Detective WILSON'S improper actions caused SUZANNE RIBANDO to be falsely arrested and wrongfully imprisoned on the numerous occasions recited herein.   The said detectives and other officers of THE NEW ROCHELLE POLICE DEPARTMENT intentionally failed to properly investigate threatening acts and crimes of aggression and violence against SUZANNE RIBANDO and failed to accept, consider or investigate complaints from SUZANNE RIBANDO against the HICKEYS.   Frequently the complaints made by the HICKEYS were patently contrived and inconsistent but these deficiencies were intentionally overlooked by New Rochelle Police Officers.

42.     On two occasions during the course of the conspiracy the HICKEYS actually threatened SUZANNE RIBANDO'S life.   On one occasion TRACEY HICKEY directly stated "die bitch" to Ms. RIBANDO and on another occasion PATRICK HICKEY stated "You're dead bitch".

43.     During the middle of the night on May 18, 2007 a heavy rock was thrown through the windshield of plaintiff's automobile which was parked on her property.   Plaintiff called the police and the responding officer made a report but no investigation was performed by THE NEW ROCHELLE POLICE DEPARTMENT.   Thereafter other criminal acts of property damage were perpetuated on plaintiff including the uprooting of flowers, removal of lawn ornaments and a garden hose cut with a knife. These acts are believed to have been perpetrated by the defendants' conspirators.

44.     In or around the weeks leading up to and including July 22, 2008 plaintiff received a series of harassing telephone call hang ups.   On July 22, 2008 a recording of the sound of gun

shots was left on Ms. RIBANDO'S home telephone answering machine. These acts are believed to have been perpetrated by the defendants' conspirators.

45.     Shortly thereafter Plaintiff appeared at NEW ROCHELLE POLICE DEPARTMENT Headquarters and reported the incident to Police Officer D'Erasimo but no investigation was conducted by the NEW ROCHELLE POLICE DEPARTMENT despite the ominous and violent nature of the calls.

46.     Even without investigation of the complaints of SUZANNE RIBANDO, the nature and substance of the acts complained of should have caused the members of THE NEW ROCHELLE POLICE DEPARTMENT to become skeptical of the chronic calculated complaints of the HICKEYS.  Due to the fact that members of the police force were conspirators with the HICKEYS in the malicious prosecution of Ms. RIBANDO, no fair scrutiny of the veracity of the HICKEY complaints was undertaken.

47.     As a result of the hostile treatment by the officers of the NEW ROCHELLE POLICE DEPARTMENT and their refusal to properly investigate claims of threats of her safety, SUZANNE RIBANDO lost faith in the NEW ROCHELLE POLICE DEPARMENTS' ability, willingness or desire to protect her as a citizen of New Rochelle. Thereafter she lived in constant fear for her own safety.

48.     Unbeknownst to SUZANNE RIBANDO was the fact that the HICKEYS had relationships with multiple members of the NEW ROCHELLE POLICE DEPARMENT and

officials working within the municipality of THE CITY OF NEW ROCHELLE and its City Court system which caused members of the NEW ROCHELLE POLICE DEPARMENT to act at the outset as agents against her in all matters complained of without investigative impartiality or fairness. All of the officers who responded to Ms. RIBANDO'S residence pursuant to a complaint from the HICKEYS did so in an aggressive, intimidating and rude manner without provocation or professional objectivity.

49.     In or around April of 2009 Ms. RIBANDO filed a civil lawsuit in New York State Supreme Court, Westchester County against PATRICK HICKEY and TRACEY HICKEY stating numerous causes of action including harassment, intentional infliction of emotional distress, abuse of process and perjury.

50.     During the various times when SUZANNE RIBANDO was arrested and in the custody of the NEW ROCHELLE POLICE DEPARTMENT, Detective WILSON, Detective VINCENT MIRABILE and other humiliated, degraded and mocked SUZANNE RIBANDO with the intention of causing her distress while she was incarcerated.

51.     The behavior of Detectives WILSON, MESSINA and MIRABILE toward SUZANNE RIBANDO was demeaning, sexist, sadistic, and despicable. Detectives WILSON and MIRABILE and other officers asked suggestive questions and made statement to SUZANNE RIBANDO which were inappropriate and without legal justification. Said statements were intended to humiliate, degrade, harass and intimidate and gain information favorable to the unlawful prosecution of SUZANNE RIBANDO.

52.     Detectives MIRABILE and WILSON repeatedly asked questions about SUZANNE RIBANDO'S civil lawsuit filed against the HICKEYS.  Said detectives blatantly inferred that she should drop the lawsuit and move out of her home to avoid future police action.

53.     During the course of her criminal prosecution The Westchester County District Attorney's Office began and continued an unlawful effort to compel SUZANNE RIBANDO to drop her civil suit by offering plea bargain terms contingent upon her moving out of her home and discontinuance of the civil lawsuit filed against the HICKEYS.  Upon information and belief James Generoso, Clerk of the City Court of New Rochelle sat in on plea discussions and influenced the substance of terms of the plea bargains offered to Ms. RIBANDO prior to her criminal trial.

54.     Because of their relationship with the complainants, Detectives WILSON, MIRABILE, MESSINA and others at the NEW ROCHELLE POLICE DEPARTMENT went far beyond the fulfillment of their duties as officers/detectives to build a case against SUZANNE RIBANDO by any means necessary, including but not limited to creating and manipulating evidence, notwithstanding the reality that SUZANNE RIBANDO did not violate any law and any reasonable objective person would realize that PATRICK HICKEY and TRACEY HICKEY were abusing an order of protection and utilizing THE NEW ROCHELLE POLICE DEPARTMENT to punish, harass and intimidate and arrest SUZANNE RIBANDO.

55.     THE NEW ROCHELLE POLICE DEPARTMENT allowed the complainants to use its officers and detectives to harass, intimidate and punish SUZANNE RIBANDO without question or investigative impartiality.  Detectives WILSON, MIRABILE, MESSINA and other officers sought to provide and did at certain times provide PATRICK HICKEY with information which PATRICK HICKEY utilized to aid his continued malicious harassment of SUZANNE RIBANDO by manipulating the substance of the complaints about SUZANNE RIBANDO in order to permit or encourage the responding officers to deal harshly and severely with SUZANNE RIBANDO and arrest her, for any perceived violation of the order of protection.

56.     It was also Detective WILSON'S intention as part of the conspiracy to craft an illusory case that the Westchester County District Attorney's Office would feel compelled to prosecute by repeatedly petitioning the District Attorney's office to initiate numerous new complaints of alleged violations of the order of protection, by SUZANNE RIBANDO.

57.     On several occasions Detective WILSON advised the District Attorney's Office of alleged acts he claimed had violated the order of protection.  The District Attorney's Office advised Detective WILSON that the conduct complained of did not violate the order of protection.  Detective WILSON persisted and continued to contact the District Attorney's Office in order to fabricate a formula of elements that would prompt the prosecutors to indict and prosecute SUZANNE RIBANDO.

58.     During the process Detective WILSON discussed and conspired with PATRICK HICKEY and TRACEY HICKEY regarding the substance of his consultations with the District

Attorney's Office which caused the HICKEYS to tailor the substance of their false complaints to include those components which the prosecutors had deemed necessary for the arrest, indictment and prosecution of SUZANNE RIBANDO.

59.    Detectives WILSON and MIRABILE and MESSINA and other officers and detectives concealed personal, and or working/financial relationships with the complainant PATRICK HICKEY which constituted a conflict of interest detrimental to the well being and civil rights of Ms. RIBANDO.

60.    The detectives concealed their relationships/conflicts so they could remain in a position to further aid and abet PATRICK and TRACEY HICKEY'S harassment, intimidation and malicious prosecution of SUZANNE RIBANDO.

61.    Upon information and belief the said detectives and other officers of THE NEW ROCHELLE POLICE DEPARMENT received consideration for their impartiality from PATRICK HICKEY and others associated with PATRICK HICKEY. Said conflict of interest was prejudicial and detrimental to justice, fairness and the civil rights and well being of SUZANNE RIBANDO. Said detectives and officers' relationships with PATRICK HICKEY influenced their handling of the case to SUZANNE RIBANDO'S detriment.

62.    The NEW ROCHELLE POLICE DEPARMENT through its Commissioner Patrick Carroll condones the off duty employment of its officers by persons and businesses including persons and businesses within the jurisdiction of THE NEW ROCHELLE POLICE

DEPARMENT which inherently creates a conflict of interests between the citizenry of New

Rochelle and THE NEW ROCHELLE POLICE DEPARTMENT.

63.    The NEW ROCHELLE POLICE DEPARMENT either had no method instituted to

monitor and prevent such self created conflicts of interests or in reckless disregard of justice and

fairness chose not to prevent or eliminate such conflicts to the detriment of its citizens and in

particular plaintiff SUZANNE RIBANDO.

64.    With regard to SUZANNE RIBANDO, The NEW ROCHELLE POLICE

DEPARTMENT actually knew or should have known of the conflicts of interest that were

created by Detective WILSON, MESSINA and MIRABILE'S handling of the case against

SUZANNE RIBANDO, as well as the conflicts of other officers who had similar relationships

with PATRICK HICKEY.

65.    Because of their personal working/financial relationship with the complainant PATRICK

HICKEY, Detectives WILSON, MIRABILE and MESSINA improperly influenced others in the

NEW ROCHELLE POLICE DEPARMENT to treat SUZANNE RIBANDO maliciously,

severely and with reckless disregard to her civil rights.

66.    Upon information and belief other detectives and officers in the NEW ROCHELLE

POLICE DEPARMENT in addition to JEFFREY WILSON, VINCENT MIRABILE, and

MICHAEL MESSINA maintained personal and/or working/financial relationships with

complainant PATRICK HICKEY causing those detectives and officers to act in a partial and

prejudicial manner toward SUZANNE RIBANDO when responding to complaints lodged by PATRICK HICKEY and his wife and at all other times SUZANNE RIBANDO was in the custody of the NEW ROCHELLE POLICE DEPARTMENT.

67.     The misconduct of Detective WILSON and others at the NEW ROCHELLE POLICE DEPARTMENT contributed in causing, without due process, an unconstitutional order of protection to be issued by Honorable Gail B. Rice, a New Rochelle City Court justice against SUZANNE RIBANDO on December 10, 2008 unlawfully and unconstitutionally restricting SUZANNE RIBANDO from performing her daily life's necessary tasks and preventing SUZANNE RIBANDO from otherwise enjoying her life.  The order issued without a hearing restricted Ms. RIBANDO from walking along the side of her home or entering her own back yard.

68.     Said order was issued secondary to a false complaint made by PATRICK HICKEY on December 9, 2008 for which SUZANNE RIBANDO was arrested without probable cause or any impartial, competent investigation of the circumstances upon which the charges based.

69.     On May 24, 2008, SUZANNE RIBANDO was falsely arrest by Detective MESSINA and other members of the NEW ROCHELLE POLICE DEPARTMENT pursuant to a false claim by TRACEY HICKEY that SUZANNE RIBANDO had damaged her vehicle.

70.     Said NEW ROCHELLE POLICE DEPARTMENT officers and detectives responded in an excessive show of force in numbers disproportionate to the false yet minor allegation that Ms.

RIBANDO scratched TRACEY HICKEY'S vehicle.  This excessive use of police resources directed at the plaintiff was designed to terrorize her and send a message.

71.    The responding officers were rude, accusatory and threatening to SUZANNE RIBANDO and failed to perform any competent investigation into the veracity of the claims made against SUZANNE RIBANDO.   Instead NEW ROCHELLE POLICE DEPARMENT officers and detectives spoke harshly and threateningly to SUZANNE RIBANDO in an effort to get her to admit to damaging the vehicle.

72.    The officers surrounded Ms. RIBANDO on her front lawn while interrogating her. SUZANNE RIBANDO vehemently denied the accusation at the scene.  NEW ROCHELLE POLICE DEPARTMENT officers lied about possessing evidence and told SUZANNE RIBANDO that she was captured on video tape, (recorded by the HICKEYS) damaging the vehicle.  Such a tactic was an unethical attempt and ruse used by several uniformed officers to get SUZANNE RIBANDO to admit to a crime she did not commit.

73.    The insistence of the officers at the scene that SUZANNE RIBANDO admit guilt because she was allegedly caught in the act on video tape was, in or of itself, a tacit admission that they had no competent objective evidence which supported the allegations.

74.    The responding officers were predisposed to arresting Ms. RIBANDO when they arrived at the scene.   Their interrogation of Ms. RIBANDO was a deliberate attempt to coerce a

confession by putting her under duress of accusatory statements and posing questions without advising her of her Miranda rights.

75.    NEW ROCHELLE POLICE DEPARTMENT'S officers and detectives repeatedly told her that they were reviewing the video tape in the HICKEY home.  The officers of the NEW ROCHELLE POLICE DEPARMENT in an effort to coerce a confession by placing SUZANNE RIBANDO under extreme duress either lied about the existence of the incriminating video tape or did indeed review a tape presented by the HICKEYS which did not corroborate TRACEY HICKEY'S accusation after which NEW ROCHELLE POLICE DEPARTMENT'S officers destroyed the exculpatory tape or participated in destroying the tape or aided and abetted the HICKEYS in destroying the tape.

76.    Despite her denials of wrongdoing and without probable cause or any objective competent evidence NEW ROCHELLE POLICE DEPARTMENT officers and detectives told SUZANNE RIBANDO that they were placing her under arrest.  Due to extreme stress, despair, duress, frustration and fear SUZANNE RIBANDO uttered words to the effect that she wanted to die and kill herself and exposed a pocket knife directed at herself but not toward the surrounding members of the NEW ROCHELLE POLICE DEPARMENT.

77.    SUZANNE RIBANDO was roughly tackled, handcuffed and taken into custody and booked for Criminal Mischief and other Violations.

78.     SUZANNE RIBANDO, with the direct knowledge of the NEW ROCHELLE POLICE DEPARTMENT was given a court appearance date of May 27, 2008 by the Clerk of the City Court, James Generoso.

79.     Later in that day of May 24, 2008, SUZANNE RIBANDO was involuntarily transported to Mt. Vernon Hospital by the NEW ROCHELLE POLICE DEPARTMENT where she was held against her will for psychological observation and testing.

80.     During her transport while in the custody of officers Michael Ciafardini and Christopher Gugliemo, a comment with ugly racist undertones was made by one of the officers upon their sighting of a group of high school age African American young men crossing the street.  The chilling implications of the language used with impunity by one of the two uninformed police officers in her presence terrified SUZANNE RIBANDO as she sat handcuffed in the rear cage of the police car.

81.     SUZANNE RIBANDO remained in Mt. Vernon Hospital against her will until her discharge on in the late afternoon of May 28, 2008.  Notwithstanding the fact that the Clerk of the City Court of New Rochelle, James Generoso and the NEW ROCHELLE POLICE DEPARTMENT had actual knowledge that SUZANNE RIBANDO was an involuntary patient in the hospital and physically unable to attend her court appearance on May 27, 2008 a warrant was maliciously issued for her arrest for failing to appear in court.

82.     SUZANNE RIBANDO was discharged from Mt. Vernon Hospital in the afternoon of May 28, 2009.  On May 29, 2009, the NEW ROCHELLE POLICE DEPARTMENT acting with malice sent Officers Andolina and Straehle to arrest SUZANNE RIBANDO without regard to her mental or emotional condition. This was even though the NEW ROCHELLE POLICE DEPARTMENT had actual knowledge that she had a suicidal event in their presence at the scene of her arrest only days prior.

83.     The NEW ROCHELLE POLICE DEPARTMENT made no effort to determine the status of SUZANNE RIBANOD'S medical/emotional condition and acting without medical consultation or regard to the trauma she would suffer by being handcuffed, taken from her home and placed in a jail cell only days after she suffered a traumatic mental breakdown due to the duress placed upon, officers of the NEW ROCHELLEE POLICE DEPARTMENT proceeded to re-arrest her.

84.     On May 29, 2008 SUZANNE RIBANDO was arrested, handcuffed, taken from her home and placed in a cell and thereafter transferred to Westchester County Jail where she remained incarcerated for a week without any legal justification.

85.     Upon information and belief, members of the NEW ROCHELLE POLICE DEPARTMENT and the Clerk of the City court of New Rochelle, James Generoso manipulated the process to ensure that SUZANNE RIBANDO suffered what amounted to a prison sentence of one week in county lock up without due process for her alleged failure to appear in court while she was involuntarily committed to the hospital.

86.     On October 13, 2009, at approximately 8:30 pm Ms. RIBANDO heard two men loudly

talking and laughing in the front of the HICKEY'S home whereupon she looked out the window

and saw PATRICK HICKEY and Detective JEFFREY WILSON loudly speaking and laughing

in an animated manner intended to make Ms. RIBANDO aware of their presence.  The presence

of the two conspirators HICKEY and WILSON was intended to intimidate and harass Ms.

RIBANDO prior to her upcoming trial scheduled for the first week in November of 2009.


87.     On the evening of October 26, 2009 SUZANNE RIBANDO witnessed Detective

WILSON drive his vehicle in the dark with the headlights off and park near her home, exit the

vehicle and stand staring at her home pointing to what appeared to be a camera or some other

type of electronic device, then get back in his car and leave.


88.     October 27, 2009 at approximately 8:30 pm Ms. RIBANDO spotted Detective

WILSON'S vehicle again approach with its headlights off.  WILSON exited the vehicle and

walked toward her home.  As Ms. RIBANDO exited her front door WILSON hurriedly walked

away from her home and turned right at the corner.  As Ms. RIBANDO got into her vehicle and

began to drive she witnessed WILSON walk in the opposite direction toward Lyon's Place.  Ms.

RIBANDO made a turn and came up behind the parked WILSON vehicle and took down the

plate number and then parked her car in her driveway.  As she crossed her lawn to enter her

home a NEW ROCHELLE POLICE DEPARTMENT car with its lights flashing pulled up in

front of her home.  She was then approached by police officer Vincent Marion who told Ms.

Ribando he was responding to a complaint of loud music from the RIBANDO home.  The complaint was reported as "unfounded" as Officer Marion acknowledged an absence of noise.

89.  The incident of October 27, 2009 demonstrates the conspiracy and coordination amongst the defendants, using their knowledge of the plaintiff's activities and utilizing unknowing members of the NEW ROCHELLE POLICE DEPARTMENT such as police officer Vincent Marion to do their bidding.

90.    On the eve of the criminal trial of this matter, Detective JEFFREY WILSON did stalk, harass and intimidate SUZANNE RIBANDO by appearing around her home in the night hours, lurking, without any legal justification but to harass and intimidate SUZANNE RIBANDO immediately prior to her criminal trial.  Detective WILSON sought to manipulate and create evidence that would be prejudicial to SUZANNE RIBANDO'S defense of the false criminal charges against her.  SUZANNE RIBANDO did fear Detective WILSONS presence based on her knowledge that he had caused her to be falsely arrested at the behest of the HICKEYS in the past.

91.    At various times during the criminal trial of SUZANNE RIBANOD, Detective WILSON repeatedly appeared and stared into the courtroom at SUZANNE RIBANDO from a back hallway connected to the courtroom although he had no rational or lawful purpose to be in or around said courtroom.  Detective WILSON intentionally stated at SUZANNE RIBANDO during her trial in order to continue to harass and intimidate her and cause her emotional distress.

92.   At plaintiff's trial Detective WILSON testified on behalf of the prosecution untruthfully and in a manner designed to obscure the truth, minimize the obvious conflict of interest of his handling of the case and influence the jury against SUZANNE RIBANDO.

93.   Members of the NEW ROCHELLE POLICE DEPARTMENT did testify on behalf of the prosecution and did testify untruthfully and in a manner designed to obscure the truth and influence the jury against SUZANNE RIBANDO.

94.   All events described herein occurred while Patrick Carroll was the Police Commissioner. Said events were able to occur due to Police Commissioner Carroll's negligence, neglect and failure to hire persons fit for service as police officers and a failure to supervise the officers under his command or to ensure that officers were following proper procedures and obeying the rules and regulations and code of ethics established by the NEW ROCHELLE POLICE DEPARTMENT.

95.   Police Commissioner Carroll knew or reasonably should have known that members of the NEW ROCHELLE POLICE DEPARTMENT including but not limited to all named herein were engaged in a pattern of misconduct while on duty and off duty which a reasonable persons and/or a competent Police Commissioner would find violated the mandate of NEW ROCHELLE POLICE DEPARTMENT Manual of Procedure, Rules & Regulations and Professional ethics and common decency.

96.     The counts for which she was acquitted included all acts for which she was initially arrested and those counts she was convicted of were solely contrived charges of contempt pertaining to wholly separate dates and allegations, only added later in order to prejudice her defense and deprive her of right to a fair trial in contesting the false charges.

97.     On April 22, 2009, to avoid the expiration of various Statutes of Limitation Ms. RIBANDO filed a civil lawsuit in New York State Supreme Court, Westchester County against PATRICK and TRACEY HICKEY with numerous causes of action including harassment, intentional infliction of emotional distress, abuse of process and perjury.

98.     Plaintiff, SUZANNE RIBANDO sustained defamation of character, loss of liberty, severe mental anguish and emotional distress and violation of her civil rights and was caused to incur financial damages including legal costs for her defense against the false charges and malicious prosecution.  Said damages exceed the jurisdictional limits of all lower courts and SUZANNE RIBANDO will seek punitive damages against the individual defendants.

## FIRST CAUSE OF ACTION
## <u>FALSE ARREST 42 USC SECTION 1983</u>

99.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "98" as though fully set forth at length herein.

100.    On May 24, 2008, defendants WILSON and MESSINA of the NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

101.   Defendants WILSON and MESSINA did not have probably cause to believe that SUZANNE RIBANDO committed any crime.

102.   Defendants WILSON and MESSINA did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted here arrest and detention.

103.   The May 24, 2008 false arrest and unlawful detention of the plaintiff by the defendants was intentional.

104.   As a result of defendant's conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

105.   Because defendants did not have probable cause to believe that Ms. RIBANDO had committed a crime, her arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

106.   As a result of defendants' conduct, Ms. RIBANDO suffered severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

107.   On May 29, 2008, defendant WILSON and other officers of the NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

108.   Defendant WILSON and the other officers did not have probably cause to believe that SUZANNE RIBANDO committed any crime.

109.   Defendant WILSON and the other officers did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

110.   The May 29, 2008 false arrest and unlawful detention of the plaintiff by the defendant was intentional.

111.   As a result of the defendant's conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

112.   Because defendants did not have probably cause to believe that Ms. RIBANDO had committed a crime, their arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution.

113.   As a result of defendant's conduct, Ms. RIBANDO suffered severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

114.    On December 9, 2008, defendant WILSON and other officers of THE NEW ROCHELLE POLICE DEPARTMENT falsely arrested SUZANNE RIBANDO.

115.    Defendant WILSON and the other officers did not have probably cause to believe that SUZANNE RIBANDO committed any crime.

116.    Defendant WILSON did not have any competent evidence indicating that SUZANNE RIBANDO engaged in any conduct that warranted her arrest and detention.

117.    The December 9, 2008 false arrest and unlawful detention of the plaintiff by the defendant was intentional.

118.    As a result of defendants conduct SUZANNE RIBANDO was detained and at all times she knew she was detained.  SUZANNE RIBANDO did not consent to her confinement.

119.    Because defendant did not have probably cause to believe that Ms. RIBANDO had committed a crime, her arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

120.    As a result of defendant's conduct, Ms. RIBANDO suffered economic damages and severe emotional distress and psychological injury and continues to suffer severe emotional distress and psychological injury.

## SECOND CAUSE OF ACTION
## STATE LAW MALICIOUS PROSECUTION

121.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "120" as though fully set forth at length herein.

122.    The acts and conduct of defendants constitute malicious prosecution under the laws of the State of New York.    Upon the criminal complaints of defendants, JEFFREY WILSON, MICHAEL MESSINA, VINCENT MIRABILE, PATRICK HICKEY and TRACEY HICKEY defendants commenced and continued a criminal prosecution in the City Court o the City of New Rochelle, Westchester County against plaintiff.    There was actual malice and absence of probably cause for the criminal proceeding.  In addition, the proceeding terminated favorably for the plaintiff when, after a jury trial on November 17, 2009 plaintiff was acquitted of all the false charges alleging crimes committed by plaintiff in the City Court of the City of New Rochelle, Westchester County before the Honorable John Colangelo.

123.    As a result of the conduct of the defendants, SUZANNE RIBANDO suffered and continues to suffer from emotional distress and psychological harm.

124.    Officers, JEFFREY WILSON, MICHAEL MESSINA, VINCENT MIRABILE, were at all times agents, servants and employees acting within the scope of their employment by The CITY OF NEW ROCHELLE and The NEW ROCHELLE POLICE DEPARTMENT which are therefore responsible for their conduct pursuant to the doctrine of *respondeat superior.*

## THIRD CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS
### (42 U.S.C. §1983, §1985)

125.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "123" as though fully set forth at length herein.

126.   Defendants have deprived plaintiff of her civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 U.S.C. §1983 and §1985.

127.   The arrest and detention of the Plaintiff SUZANNE RIBANDO, by Defendants, JEFFREY WILSON, MICHAEL MESSINA, and VINCENT MIRABILE, and the agents and employees of defendant CITY OF NEW ROCHELLE were in furtherance of a plan and the individual defendants conspired in bringing a false prosecution in order to conceal their misconduct.

128.   Defendants' conduct deprived plaintiff of her rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.  Defendants' conduct also deprived plaintiff of her right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

129.   As a result of the conduct of the defendants, Ms. RIBANDO suffered, and continues to suffer economic damages and emotional and psychological harm.

130.    The acts and conduct of all defendants in denying plaintiff her liberty on multiple occasions tconstituted wrongful imprisonment under 42 U.S.C. §1983.

131.    On all of the dates of arrest indicated herein, defendants, JEFFREY WILSON, MICHAEL MESSINA and VINCENT MIRABILE arrested SUZANNE RIBANDO and took her to the New Rochelle Police Headquarters, where she was incarcerated against her will.

132.    After defendants arrested SUZANNE RIBANDO on May 29, 2008 she was detained in a locked cell at New Rochelle Police Headquarters against her will and then transferred to the Westchester County Jail in Valhalla, New York where she was incarcerated for a period of seven days.

133.    Defendants subjected plaintiff to wrongful imprisonment and deprivation of liberty without probably cause.

134.    Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable under 42 U.S.C. §1983.

135.    As a result of the conduct of the defendants, Ms. RIBANDO suffered, and continues to suffer, from physical, psychological and financial harm.

## FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

136.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "135" as though fully set forth at length herein.

137.   The aforesaid conduct of defendants, Detectives WILSON, MESSINA and MIRABILE and PATRICK HICKEY, and TRACEY HICKEY was intentional and/or a disregard of a substantial probability of causing a severe emotional distress to plaintiff.

138.   The aforesaid conduct and acts of defendants, Detectives WILSON, MESSINA and MIRABILE, and PATRICK HICKEY and TRACEY HICKEY were directed towards plaintiff SUZANNE RIBANDO.

139.   The aforesaid conduct of defendants, Detectives WILSON, MESSINA and MIRABILE, and PATRICK HICKEY and TRACEY HICKEY was done in an extreme, shocking and outrageous manner.

140.   The aforesaid conduct of the defendants Detectives WILSON, MESSINA and MIRABILE, and PATRICK HICKEY and TRACEY HICKEY exceeded all reasonable bounds of decency.

141.   PATRICK HICKEY and TRACEY HICKEY conspired with Detectives WILSON, MESSINA and MIRABILE to use their children to incite, alarm and justify the police department into responding and reacting to their otherwise benign false claims.

142.   The aforesaid conduct of defendants, PATRICK HICKEY and TRACEY HICKEY, terrorized, frightened and tormented plaintiff, causing her to fear for her life and or fear physical injury from defendants.

143.   Defendants did intend to frighten, terrorize and torment plaintiff, and cause her to fear for her life and or fear physical injury from defendants.

144.   As a direct result of defendants, PATRICK HICKEY and TRACEY HICKEY, intentionally inflicting mental distress to plaintiff, they have caused various damages to plaintiff, including, but not limited to:

      a.     pain, suffering, embarrassment, humiliation, anxiety, fear, phobia, suicidal thoughts and mental stress and distress;

      b.     psychiatric bills, medical bills, hospital bills, medical expenses, deductibles, co-pays, prescriptions and other costs for medical diagnosis and treatment;

      c.     disability, lost wages and/or the loss of earning potential;

      d.     loss of the enjoyment of life;

      e.     incurred legal fees.

145.   That by reason of PATRICK HICKEY and TRACEY HICKEY'S reckless, willful and deliberate actions in terrorizing, tormenting, harassing, threatening, cruel and inhuman actions in threatening, intimidating and filing false claims against SUZANNE RIBANDO causing her to sustain conscious pain, mental and emotional stress and anguish, trauma and distress, SUZANNE RIBANDO is entitled to punitive damages against PATRICK HICKEY and TRACEY HICKEY.

146. Said conduct amounts to the tort of intentional infliction of mental distress.

## FIFTH CAUSE OF ACTION
## <u>CONSPIRACY</u>

147.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "146" as though fully set forth at length herein.

148.    At all material times, the State of New York provides for a private right of action based upon a penal statute and that the private civil action may be brought by a member of the class protected by the penal statute.   Plaintiff is a member of the class protected by the statute mentioned hereinafter.

149.    Said civil action for the violation of a statutory duty may be brought by any person injured thereby.   Plaintiff has been damaged by the violation of the statute, as set forth in this complaint.

150.    New York Penal Law 105.00 provides that a person guilty of conspiracy in the sixth degree when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.

151.    The conduct of defendants averred hereinbefore constitutes a violation of the above statute and violation of duties set forth in the above statute. The defendants' conspiracy

committed the crimes of perjury, filing of false documents, criminal mischief and aggravated harassment amongst others.

152.    As a direct result of defendant's violation of New York statutes and statutory duties, plaintiff, SUZANNE RIBANDO, has sustained harm, injuries and damages to her person, property and business, all of which were caused in fact by defendants, including but not limited to:

     a.    pain, suffering, embarrassment, humiliation, anxiety, fear, phobia, suicidal thoughts and mental stress and distress;

     b.    legal fees, bail costs, psychiatric bills, medical bills, hospital bills, medical expenses, deductibles, co-pays, prescriptions and other costs for medical diagnosis and treatment;

     c.    disability, lost wages and/or the loss of earning potential;

     d.    loss of the enjoyment of life;

     e.    incurred legal fees.

153.    That by reason of Detectives WILSON'S, MESSINA'S and MIRABILE'S, PATRICK HICKEY'S and TRACEY HICKEY'S reckless, willful and deliberate actions in terrorizing, tormenting, harassing, threatening, cruel and inhuman actions in threatening, intimidating and filing false claims against SUZANNE RIBANDO causing her to sustain conscious pain, mental and emotional stress and anguish, trauma and distress, SUZANNE RIBANDO is entitled to punitive damages against those Defendants.


**WHEREFORE, plaintiff prays for:**

a.      Property loss to Plaintiff which are costs incurred in legal expenses, investigation expenses, amounts to be proved at the trial of this cause, multiplied by three, as provided by statute, (18 U.S.C. §1964 ( c ).

b.      Reasonable attorneys' fees the sum total to be computed at the conclusion of the trial of this cause, at a rate commensurate with Plaintiff's attorneys experience, nature and length of time involved, (18 U.S.C. §1964 ( c).

c.      Costs of litigation, (18 U.S.C. §1964 ( c ).

d.      Any other further relief the court deems just and proper.

## JURY DEMAND

154.    Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

(a)     compensatory damages in an amount to be determined at trial;

(b)     punitive damages in an amount to be determined at trial;

(c)     reasonable attorneys' fees;

(d)     costs and expenses; and

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK
COUNTY OF SDNY - WHITE PLAINS            SS.:

      Ayonette Alleyne being duly sworn, deposes and says:

      I am over 18 years of age, I am not a party to the action, and I reside in Kings County in the State of New York.

      I served a true copy of the annexed **AMENDED COMPLAINT** on Thursday, November 10, 2011 by Overnight Express Mail, by mailing the same in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee as indicated below:

Law Office of Gary A. Cusano, P.C.
Attorneys for Defendants
PATRICK HICKEY AND TRACEY HICKEY
2649 Strang Blvd., Suite 104
Yorktown Heights, NY 10598
914-245-7200
Tracking #ER 843073585 US

Sokoloff Stern, LLP
Attorneys for Defendants
THE CITY OF NEW ROCHELLE
THE NEW ROCHELLE POLICE DEPARTMENT
JEFFREY WILSON, MICHAEL MESSINA,
and VINCENT MIRABILE
355 Post Avenue, Suite 201
Westbury, NY 11590
516-334-4500
Tracking #ER 843073599 US

                                       *Ayonette Alleyne*
                                       Ayonette Alleyne

Sworn to before me on Thursday, November 10, 2011

_____
Notary Public

Kelly L. Murtha, Esq.
Notary Public, State of New York
No. 02MU6031625
Qualified in Bronx County
Commission Expires October 4, 20_13

Docket No.: 11-CV-0976 (KMK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUZANNE RIBANDO,

    Plaintiff,

-against-

THE CITY OF NEW ROCHELLE, THE NEW
ROCHELLE POLICE DEPARTMENT,
JEFFREY WILSON, MICHAEL MESSINA,
VINCENT MIRABILE, PATRICK HICKEY
and TRACEY HICKEY,

    Defendants.

## AMENDED COMPLAINT

## CASCIONE, GALLUZZI, LLC
*Attorneys for Plaintiff*
**20 Vesey Street, Suite 1100**
**New York, New York 10007**
**(212)964-9640**